JOSEPH R. DUNN (State Bar No. 238069)
jdunn@cov.com
JULIA PHILIPS ROTH (State Bar No. 324987)
jphilipsroth@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Counsel for Receiver
DAVID P. STAPLETON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>        Plaintiff,<br><br>    vs.<br><br>TOUCHSTONE PISTACHIO COMPANY, LLC; FARSHID ASSEMI; FARID ASSEMI; DARIUS ASSEMI; NEEMA ASSEMI; MELISSA LAYNE; SONIA ROSEMARY ASSEMI; MARICOPA ORCHARDS, LLC; C&A FARMS, LLC; ACDF, LLC; CANTUA ORCHARDS, LLC; LINCOLN GRANTOR FARMS, LLC; PANOCHE PISTACHIOS, LLC; ADAMS GRANTOR LAND, LLC; GRANVILLE FARMS, LLC; SAGEBERRY FARMS, LLC; GRADON FARMS, LLC; MANNING AVENUE PISTACHIOS, LLC; ASSEMI AND SONS, INC.; WINSTON FARMS, LLC; FFGT FARMS, LLC; FAVIER RANCH, LLC; GRANTLAND FARMS, LLC; WHITESBRIDGE FARMS, LLC; ACAP FARMS, LLC; BEAR FLAG FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; WILLOW AVENUE INVESTMENTS, LLC; ASHLAN & HAYES INVESTMENTS, LLC; ASSEMI BROTHERS, LLC,<br><br>             Defendants. | Case No. 1:24-cv-01105-KES-SAB<br><br>**RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS**<br><br>Hearing:<br><br>Date:       February 3, 2025<br>Time:      1:30 p.m. PT<br>Location:  Courtroom 6, 7th floor<br>           2500 Tulare Street<br>           Fresno, CA  93721<br>Judge:    Hon. Kirk E. Sherriff<br><br>Action Filed:  September 17, 2024 |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on February 3, 2025, at 1:30 p.m. PT, or as soon thereafter as the matter can be heard, in Courtroom 6, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, David P. Stapleton, in his capacity as the duly appointed receiver (the "Receiver") will, and hereby does, by and through his undersigned counsel, move the Court for an order authorizing the Receiver's to make an interim disbursement (the "Disbursement") of a portion of the proceeds of sales of crop inventory (the "Inventory") and collection of accounts receivable related to pre-receivership Inventory sales ("Accounts Receivable") to certain secured creditors of Touchstone Pistachio Company, LLC ("Touchstone"), namely (i) Plaintiff U.S. Bank, National Association ("Plaintiff" or "U.S. Bank") and (ii) third-party pistachio growers Coleman Land Co., LLC ("Coleman"), Firestone Farms, LLC ("Firestone"), Huron Nuts LLC ("Huron"), Porterville Nuts LLC ("Porterville"), Pat Henry, Norag Nuts LLC ("Norag"), The Robert P. Schoettler And Joan C. Schoettler Revocable Trust ("Schoettler"), SLO Nuts LLC ("SLO" and, together with Coleman, Firestone, Porterville, Pat Henry, Norag, and Schoettler, the "Coleman Group"), Todd Henry Revocable Trust (DBA 915 Farms) ("THRT"), and Yellow Hotel II, LLC ("Yellow Hotel" and, collectively with U.S. Bank, the Coleman Group, and THRT, the "Secured Creditors").

**PLEASE TAKE FURTHER NOTICE** that the Receiver seeks authority to make the Disbursement to the Coleman Group, THRT, and Yellow Hotel on account of their respective statutory liens on certain Inventory or the proceeds thereof, under California Food and Agricultural Code § 55631 ("Producer Liens"), in each case in full and final satisfaction of all claims and liens the Coleman Group, THRT, and Yellow Hotel may have against Touchstone, the Receivership Property or the proceeds thereof.

**PLEASE TAKE FURTHER NOTICE** that the Receiver also seeks a determination that, other than the Secured Creditors, no other persons or entities have established a right to receive any portion of the Disbursement, including pursuant to any statutory Producer Lien on the Inventory or its proceeds.

**PLEASE TAKE FURTHER NOTICE** that, in support of the requested relief, the Receiver relies upon this Notice of Motion and Motion (the "Motion"), including the Memorandum of Points and Authorities set forth below, the declaration of David P. Stapleton (the "Stapleton Declaration") filed

contemporaneously herewith, the other files and records in this action, and any other evidence or argument the Court may consider.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 230(c) of the Local Rules of Practice for the United States District Court, Eastern District of California, **if you wish to object to the relief requested in the Motion, you must file and serve a written objection no later than <u>January 13, 2025</u> (fourteen (14) days after the Motion was filed).  If you fail to file a timely opposition, you will not be entitled to be heard in opposition to the Motion at oral arguments, and the Court may consider such failure as non-opposition to the Motion**.

In accordance with Section I.C of this Court's Standing Order in Civil Cases, this Motion is made following conferences of counsel with (i) Mr. Joseph VanLeuven, counsel for plaintiff U.S. Bank, (ii) Mr. David Hurst, counsel for defendant Touchstone and certain other defendants (the "<u>Touchstone Defendants</u>"),[1] and (iii) Ms. Beth Young, counsel for certain other defendants (the "<u>Guarantor Defendants</u>").[2]  The Receiver's undersigned counsel hereby certifies that meet and confer efforts with such parties have been exhausted.  On information and belief, U.S. Bank, the Coleman Group, THRT, and Yellow Hotel will not oppose the Motion.  The Touchstone Defendants and the Guarantor Defendants have not yet determined whether they will take a position on the relief sought in the Motion.  The Receiver believes certain third-party growers who assert Producer Liens will oppose the Motion.

DATED: December 30, 2024

COVINGTON & BURLING LLP

By: */s/ Joseph R. Dunn*

Joseph R. Dunn (State Bar No. 238069)
jdunn@cov.com
Julia Philips Roth (State Bar No. 324987)
jphilipsroth@cov.com

Counsel for Receiver
DAVID P. STAPLETON

---

[1] The Touchstone Defendants represented by Mr. Hurst are identified at Dkt. 27.

[2] The Guarantor Defendants represented by Ms. Young are identified at Dkt. 60.

## Table of Contents

I.    Introduction ................................................................................................ 1

II.    Factual Background ..................................................................................... 3

    A.    General Case Background............................................................... 3

    B.    Touchstone Inventory ..................................................................... 5

        1.    Purchases from Maricopa Growers.................................... 6

        2.    Purchases from Non-Maricopa Growers ........................... 7

    C.    Receivership Cash........................................................................... 8

    D.    U.S. Bank's Liens on the Receivership Property........................... 9

    E.    Producer Liens on Inventory and its Proceeds............................... 9

    F.    Proposed Disbursement ................................................................ 11

III.    Argument .................................................................................................. 11

    A.    The Secured Creditors have a Senior Priority Right to Receive the Proceeds ..... 11

        1.    U.S. Bank's Senior Priority Blanket Lien on Receivership Property ....... 11

        2.    Senior Priority Producer Liens on Inventory and the Proceeds Thereof .. 12

    B.    The Proposed Distribution Is Fair and Reasonable................................ 15

IV.    Conclusion ................................................................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Cases**

*Am. State Bank v. Van De Nieuwegiessen*,

    No. CIV-09-322-L, 2009 WL 3152927 (W.D. Okla. Sept. 24, 2009) ................................. 16

*Bauman v. Islay Invs.*,

    106 Cal. Rptr. 889 (Cal. Ct. App. 1973) .............................................................. 13

*CFTC v. Eustace*,

    No. 05-2973, 2008 WL 471574 (E.D. Pa. Feb. 19, 2008) ....................................... 15

*CFTC v. Oasis Int'l Grp., Ltd.*,

    No. 8:19-CV-886-VMC-SPF, 2024 WL 1539657 (M.D. Fla. Mar. 22, 2024) .................. 16

*CFTC v. PrivateFX Global One*,

    778 F. Supp. 2d 775 (S.D. Tex. 2011) ................................................................ 15

*In re GVF Cannery, Inc.*,

    202 B.R. 140 (N.D. Cal. 1996) .......................................................................... 13

*In re Loretto Winery Ltd.*,

    898 F.2d 715 (9th Cir. 1990) ............................................................................. 13

*Kelley v. Kelley*,

    No. 1:18-CV-11692-IT, 2019 WL 6841818 (D. Mass. Dec. 16, 2019) ......................... 16

*Liberte Cap. Grp., LLC v. Capwill*,

    462 F.3d 543 (6th Cir. 2006) ...................................................................... 14, 15

*PNC Bank, Nat'l Ass'n v. Goyette Mech. Co., Inc.*,

    No. 14-10527, 2015 WL 13021657 (E.D. Mich. Nov. 9, 2015) ................................. 16

*Redding Bank of Com. v. Keser*,

    No. 2:13-CV-01756-JAM, 2014 WL 1665239 (E.D. Cal. Apr. 24, 2014) ....................... 12

*S.E.C. v. Am. Cap. Invs., Inc.*,

    98 F.3d 1133 (9th Cir. 1996) .............................................................................. 14

*S.E.C. v. Amerifirst*,

    No. 3:08-CV-1188-D, 2008 WL 919546 (N.D. Tex. Mar. 13, 2008) ........................... 15

*S.E.C. v. Bivona*,

    No. 16-CV-01386-EMC, 2017 WL 4022485 (N.D. Cal. Sept. 13, 2017) ........................................ 15

*S.E.C. v. Black*,

    163 F.3d 188 (3d Cir. 1998).......................................................................................................... 15

*S.E.C. v. Cap. Consultants, LLC*,

    397 F.3d 733 (9th Cir. 2005) ....................................................................................................... 15

*S.E.C. v. Copeland*,

    645 F. App'x 596 (9th Cir. 2016) ................................................................................................. 14

*S.E.C. v. Forex Asset Mgmt. LLC*,

    242 F.3d 325 (5th Cir. 2001) ....................................................................................................... 15

*S.E.C. v. Hardy*,

    803 F.2d 1034 (9th Cir. 1986) ..................................................................................................... 15

*S.E.C. v. McKnight*,

    No. 08-11887, 2012 WL 2061030 (E.D. Mich. June 7, 2012) ..................................................... 16

*S.E.C. v. Merrill Scott & Assocs., Ltd.*,

    No. 2:02-CV-39, 2006 WL 3813320 (D. Utah Dec. 26, 2006) .................................................... 15

*S.E.C. v. Wang*,

    944 F.2d 80 (2d Cir. 1991).......................................................................................................... 15

*S.E.C. v. Wencke*,

    783 F.2d 829 (9th Cir. 1986) ....................................................................................................... 14

*U.S. v. Arizona Fuels Corp.*,

    739 F.2d 455 (9th Cir. 1984) ....................................................................................................... 14

**Statutes**

Cal. Food & Agr. Code § 55631 ..................................................................................................... 2, 12

Cal. Food & Agr. Code § 55633 ........................................................................................................ 13

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

## Memorandum of Points and Authorities

### I.    Introduction

The Receiver was appointed by stipulation of the parties to liquidate the property of Touchstone (the "Receivership Property").  The Receivership Property is comprised of all of the assets of Touchstone – all of which constitutes collateral of secured creditor U.S. Bank.  To date, the Receiver has sold certain 2023 pistachio crop inventory (the "2023 Inventory") and collected Accounts Receivable from pre-receivership sales of 2023 Inventory and 2024 pistachio crop inventory (the "2024 Inventory").  As set forth in more detail below, the Receiver now has substantial funds on hand in excess of the amount required to fund his continued orderly administration and liquidation of the Receivership Property. Pursuant to the Receivership Order (defined below), distribution of those funds to Touchstone's pre-receivership creditors is subject further order of the Court.

Specifically, as of December 20, 2024, the Receiver was holding $15,103,390 of proceeds of Inventory and Accounts Receivable (the "Proceeds"), comprised of (i) $ 12,061,040 of funds collected by the Receiver from sales of 2023 Inventory and (ii) $3,042,350 of funds collected by the Receiver from sales of 2024 Inventory.  Of this amount, the Receiver seeks to reserve $3 million of proceeds of 2023 Inventory to ensure sufficient funds are available for continued administration of the Receivership Property, including ongoing sales of the remaining Inventory and liquidation of other assets.

However, in light of the senior priority liens of U.S. Bank and certain third-party growers who delivered pistachio product to Touchstone prior to the receivership, and the benefit of reducing accruing interest on the outstanding balance owed to U.S. Bank, the Receiver seeks authority to make an interim Disbursement of $12,103,390 of the Proceeds to the Secured Creditors as follows:

- **2023 Inventory Proceeds:**

| Secured Creditor | Disbursement Amount |
|---|---|
| Coleman | $104,632.83 |
| Shoettler | $25,678.38 |
| Norag | $16,915.63 |
| Huron | $28,812.00 |
| Pat Henry | $47,464.50 |
| Porterville | $23,726.25 |
| Firestone | $35,905.87 |
| SLO | $102,967.00 |
| THRT | $118,364.00 |

| Secured Creditor | Disbursement Amount |
|---|---|
| Yellow Hotel | $42,782.00 |
| U.S. Bank | $8,513,791.54 |
| **Total** | **$9,061,040.00** |

- **2024 Inventory Proceeds:**

| Secured Creditors | Disbursement Amount |
|---|---|
| Coleman | $218,790.10 |
| Shoettler | $60,005.72 |
| Yellow Hotel | $270,982.46 |
| U.S. Bank | $2,492,571.72 |
| **Total** | **$3,042,350.00** |

The Receiver submits that the proposed Disbursement is fair, equitable and in accordance with the priorities applicable to the claims by Touchstone's creditors to recover from the Receivership Property. Specifically, based on the Receiver's diligence to date, the Secured Creditors appear to be the only parties with cognizable senior liens on the 2023 Inventory, 2024 Inventory or proceeds thereof. U.S. Bank has a claim against Touchstone secured by liens on the Receivership Property – including the Inventory, Accounts Receivable, and proceeds thereof – in an amount that greatly exceeds the amount of the proposed Disbursement to U.S. Bank. The Receiver is not aware of any other party which has recorded a security interest in the Inventory or Accounts Receivable.

In addition, the Receiver is aware that certain pistachio growers who delivered crop to Touchstone (collectively, the "Growers") assert statutory Producer Liens on certain Inventory and proceeds thereof under California Food and Agricultural Code § 55631, which, if valid, are senior in priority to any prior-recorded security interest in the Inventory. Based on the terms of the Grower Agreements (defined below) and related agreements between Touchstone and third-party growers reviewed to date, the Receiver has determined that growers THRT and Yellow Hotel have valid Producer Liens in the amounts stated herein. However, all Growers *other than* THRT and Yellow Hotel have either (i) contractually waived their right to Producer Liens via an advanced waiver and/or (ii) contractually subordinated any such liens to the liens of U.S. Bank. Thus, the Receiver believes the claims of such Growers against Touchstone and its assets are either unsecured and/or junior in priority to the existing liens of U.S. Bank. As a result, claims by Growers other than THRT and Yellow Hotel can be paid only (i) to the extent U.S. Bank is first paid in

full (for subordinated claims) or (ii) if U.S. Bank otherwise consents to senior priority treatment of such claim.

The Receiver is aware that certain growers, including the Coleman Group, have disputed the enforceability of their contractual waivers of Producer Lien rights.[3]  The Receiver has been informed that U.S. Bank and the Coleman Group have since entered into a settlement under which U.S. Bank has agreed the Coleman Group members have senior priority Producer Liens on certain Inventory and proceeds thereof in the amounts set forth in this Motion.  Thus, the Receiver seeks authority to make those payments as part of the Disbursement.

## II.    Factual Background

### A.    General Case Background

Prior to this receivership (the "Receivership"), Touchstone was in the business of purchasing and processing pistachio nuts and selling that crop inventory to third parties in the open market.  Dkt. 17 at ¶¶ 2, 14, 23; Dkt. 20 at ¶¶ 1, 11.  Touchstone is headquartered in Fresno, California, but operated primarily from its processing facility in Terra Bella, California (the "Facility").  Dkt. 1 at ¶¶ 2, 48.

On September 17, 2024, Plaintiff filed its Complaint for Breach of Credit Agreement, Breach of Guaranty Agreement, Breach of Forbearance Agreement, Judicial Foreclosure, Specific Performance, Appointment of Receiver, Replevin, and Injunctive Relief (the "Complaint") alleging Touchstone and its co-defendants are liable to Plaintiff in the amount of at least $72 million under (a) that certain Credit Agreement dated as of March 20, 2020 by and among Touchstone as borrower, the financial institutions or entities party thereto as lenders (the "Lenders"), and U.S. Bank (as successor in interest to MUFG Union Bank, N.A. ("MUFG")) as administrative agent and collateral agent (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") and (b) that certain Security Agreement dated as of March 20, 2020 by Touchstone, as borrower, in favor of U.S. Bank (as successor in interest to MUFG), as administrative agent and collateral agent (as amended, restated,

---

[3] The Receiver is aware that other Growers, including Costamagna Farms #4 ("CF4") and Costamagna Farms LLC ("CFL" and, together with CF4, "Costamagna"), also dispute the validity of their contractual advance waivers of Producer Lien rights.  *See* Dkt. 72.  To date, the Receiver has not been informed that U.S. Bank has reached a resolution of that dispute or consented to payment of any amounts to Costamagna on a senior-priority basis.  *See* Stapleton Decl. at ¶ 76.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

supplemented or otherwise modified from time to time, the "Security Agreement" and, together with the Security Agreement and any other reports, documents, instruments, agreements, certificates, and schedules executed or delivered pursuant to or in connection with the Credit Agreement, the "Loan Documents"). Dkt. 1. On September 27, 2024, Plaintiff and Touchstone stipulated to the appointment of a receiver because, among other things, both parties "recognize the value in minimizing the cost and uncertainty of litigation, as well as maximizing the value of the assets that are in dispute as a result of the Complaint." Dkt. 31 at ¶ 5.

On September 28, 2024, the Court entered the order appointing the receiver (the "Receivership Order"), finding "[g]ood cause exists for the appointment of a receiver in order to maximize the recovery to creditors through the orderly sale of the assets of defendant Touchstone, and collection of obligations owed to Touchstone." Receivership Ord. at ¶ C. The Receivership Order appointed David P. Stapleton "as a general receiver in this action," effective as of October 1, 2024, the date he furnished the required bond to the Court. *Id.* at ¶¶ 1, 40; Dkt. 36.

In accordance with his mandate to maximize the pool of funds available for distribution to creditors, the Receiver is authorized to, among other things, sell Inventory and collect Accounts Receivables owed to Touchstone. Receivership Ord. at ¶¶ C, 3, 14. All sales of Inventory authorized by the Court under the Receivership Order shall be free and clear of all liens, claims and encumbrances of the Growers, including any statutory Producer Liens, with all such liens (if any) to attach to the proceeds of such Inventory to the same extent, priority and validity as exist at the time of sale. Order Amending Receivership Order [Dkt. 87] at ¶ 5.

The Receivership Order authorizes the Receiver to "pay the operating expenses of the Receivership Property from the income generated by the Receivership Property" without further action by the Court. Receivership Ord. at ¶ 28; *see also id.* at ¶ 12 (authorizing receiver sign checks or initiate and process electronic funds transfers, which are necessary or incidental to preserving, protecting, managing, controlling and/or liquidating the Receivership Property); *id.* at ¶ 34 (authorizing Receiver to pay the Receiver's professional fees without further Court action absent objection to notice of intent to compensate professionals). However, aside from amounts expended to satisfy operating expenses or for

other authorized purposes, the Receiver is not permitted to disburse funds in his possession to creditors without further order of the Court.  Specifically, paragraph 15 of the Receivership Order states:

> Net proceeds from sale of Receivership Property, and other money coming into possession of the Receiver and not expended for any of the purposes herein authorized, shall be held by said Receiver for the payment of the obligations of Touchstone to Plaintiff and other creditors, subject to such orders as the Court may hereinafter issue as to its disposition.

*Id.* at ¶ 15.

On November 18, 2024, Touchstone, together with certain other Defendants, filed its Answer to the Complaint (the "Answer").  Dkt. 56.  In its Answer, Touchstone admits it "obtained funding for its operations under [the Credit Agreement, as amended] by that certain Forbearance, Waiver and Amendment Agreement made as of November 17, 2023 (the "Forbearance Agreement")."  Dkt. 56 at 8:23-9:6.  Touchstone further admits that "[t]rue and correct copies of the Credit Agreement and Forbearance Agreement are attached as Exhibits 1 and 2, respectively, to [the Complaint filed by U.S. Bank]."  *Id.*

In the Forbearance Agreement, Touchstone confirmed and acknowledged, among other things, that (i) U.S. Bank "has, and shall continue to have, valid, enforceable and perfected first priority liens upon and security interests in" the "Collateral" (as defined in the Credit Agreement); (ii) the unpaid principal balance under the Credit Agreement as of October 23, 2023 was $113,283,148.52, and (iii) as a result of the "Acknowledged Defaults" (as defined in the Forbearance Agreement), U.S. Bank "is entitled to demand immediate payment in full of all obligations arising under the Credit Agreement" and other Loan Documents.  Dkt. 1, Ex. 2 at §§ 3.1, 3.3, 3.4.  Pursuant to a UCC search conducted on December 20, 2024, U.S. Bank is the only party who has filed a UCC-1 financing statement asserting a security interest in the Inventory or Accounts Receivable.  *See* Stapleton Decl. at ¶ 2, Ex. A.

### B.    Touchstone Inventory

The Facility was historically used to process nuts supplied by various affiliated farming entities (collectively, "Maricopa Growers"), but Touchstone also purchased some nuts from unaffiliated growers (the "Non-Maricopa Growers") pursuant to certain Grower Processing & Marketing Agreements (each, a "Grower Agreement" and, collectively, the "Grower Agreements").  Stapleton Decl. at ¶ 4.  Most of the Maricopa Growers executed either (i) that certain Amended and Restated Grower Subordination

Agreement, dated as of October 6, 2022 (the "Subordination Agreement"), (ii) or that certain Joinder Agreement, dated as of dated as of May 5, 2023, to the Subordination Agreement (the "Joinder" and, together with the Subordination Agreement, the "Subordination Agreements"). *Id.* at ¶ 8, Exs. B-C. Pursuant to the Subordination Agreements, all of Touchstone's obligations to the applicable Maricopa Growers (and any liens and security interests securing the same), are expressly subordinated to Touchstone's obligations to U.S. Bank (and liens and security interests securing the same) so long as any such obligations to U.S. Bank remain unpaid. *See Id.*, Exs. B-C.[4]

As of the commencement of the Receivership, Touchstone's Inventory included 2023 Inventory, 2024 Inventory, and a small amount of leftover Inventory from the 2022 crop year. Receiver's Initial Inventory and Operating Report for October and November 2024 (the "Oct & Nov Operating Report") [Dkt. 77], Ex. D. The 2023 Inventory purchased by Touchstone from a particular Grower was commingled with the 2023 Inventory purchased from other Growers. Stapleton Decl. at ¶ 5. Similarly, the 2024 Inventory from a particular Grower was commingled with the 2024 Inventory purchased from other Growers. *Id.* However, the Receiver understands that Inventory for a given crop year (2023 or 2024) was not commingled with Inventory for a different crop year. *Id.*

### 1.    Purchases from Maricopa Growers

Touchstone purchased 2023 Inventory from the following Maricopa Growers pursuant to their respective Grower Agreements (collectively, the "2023 Maricopa Growers"):

| A&H Investments, LLC | GoldStar Investment Group, LLC | Manning Avenue Pistachios, LLC |
|---|---|---|
| ACAP Farms, LLC | Gradon Farms, LLC | Maricopa Orchards, LLC |
| ACDF, LLC | Granville Farms, LLC | Panoche Pistachios, LLC |
| Bear Flag Farms, LLC | Granville GPEH split | Panoche GPEH split |
| Cantua Orchards, LLC | Kamm South, LLC | Panoche Panoche-Beck-Nili |
| C&A Farms, LLC | Lincoln Grantor Farms, LLC | Sageberry Farms, LLC |
| FFGT Farms, LLC | | |

*Id.* at ¶ 6.

---

[4] The administrative agent and collateral agent under the Loan Documents at the time the Subordination Agreements were executed was identified as MUFG. The Receiver understands that U.S. Bank is the successor-in-interest to MUFG as a lender and as the administrative agent and collateral agent under the Loan Documents. *See* Dkt. 1 at 7:25-28.

Other than GoldStar Investment Group, LLC and Kamm South, LLC (the "Unsubordinated Maricopa Growers"), all of the 2023 Maricopa Growers executed one of the Subordination Agreements (the "Subordinated Maricopa Growers"). *Id.* at ¶ 8.

Additionally, Touchstone purchased 2024 Inventory from Subordinated Maricopa Growers A&H Investments, LLC and ACAP Farms, LLC (together, the "2024 Maricopa Growers"). *Id.* at ¶ 7.

A chart setting forth all Maricopa Growers, the crop year(s) for which they delivered Inventory, and whether they have executed one of the Subordination Agreements is attached hereto as **Appendix 1** for ease of reference.

### 2.    Purchases from Non-Maricopa Growers

Touchstone purchased 2023 Inventory from the following Non-Maricopa Growers pursuant to their respective Grower Agreements (collectively, the "2023 Non-Maricopa Growers"):

| | | |
|---|---|---|
| A & T Romero | Gold Leaf Farming - GLF11, GLF13, GLF16, GLF20, and GLF22 | Premiere Agricultural Properties, LLC |
| ABC Farms Inc | Huron | R & R Family Holdings LLC |
| Abdul Awal Hanifi | JP Farms | Richard Lopez Farms |
| Ahmad Emami | KMS Pistachios LLC | Rosalio F. Barraza |
| Avellar-Moore Farms LP | Macias Ranch Dinuba, LLC | Roxana Farm Holdings |
| Beck Family Orchards | Malakan Investments, LLC | S & K Trust |
| Beck Panoche-Beck-Nili | Mauricio Macias | Salehi Farms |
| BTV Crown Farms LLC | Michelle R Thompson | Schoettler |
| Chad Crivelli | Millennium Acquisitions, LLC | SKDD Trust |
| Coleman | MP Farms | SLO |
| CF4 | Naginder Bains | Sol Aureus Farms LP |
| CFL | Nili Panoche-Beck-Nili | Terra Bella Ranch LLC |
| DJ Farms | Norag | THRT |
| Dumar, LLC | Olam Farming, Inc. | Torbat Farms, LLC |
| Eddie Brooks-Velasquez (Chase Brooks Ranch) | OMT Pistachio LP | Triple F Ranch |
| Etchegaray Farms, LLC | Pat Henry | US Horticulture Farmland, LLC |
| Firestone | Pistache, LLC | Varoojan & Monica Mirzayan |
| Golden R, Inc. | Porterville | Yellow Hotel |

Stapleton Decl. at ¶ 27.

Additionally, Touchstone purchased 2024 Inventory from the following Non-Maricopa Growers pursuant to their respective Grower Agreements (collectively, the "2024 Non-Maricopa Growers"):

| | |
|---|---|
| BTV Crown Farms LLC | Mark Trinkle |
| Chad Crivelli | Mauricio Macias |
| Coleman | Rosalio F. Barraza |

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

| CF4 | Schoettler |
|-----|------------|
| CFL | Yellow Hotel |

*Id.* at ¶ 28.

A chart setting forth all Non-Maricopa Growers and the crop year(s) for which they delivered Inventory is attached hereto as **Appendix 2** for ease of reference.

### C.    Receivership Cash

At the time of the Receiver's appointment, Touchstone had pre-existing bank accounts with both U.S. Bank and BMO Bank.  Oct & Nov Operating Report at 7:14-14.  The Receiver immediately obtained sole signature authority over both accounts.  *Id.* at 7: 14-15.  The combined cash balance in these accounts as of the date of the Receiver's appointment was $1,500,138.  *Id.* at 7:15-16.  To date, those funds have been expended in their entirety to fund the ongoing operating expenses of Touchstone and the Receivership Property.  Stapleton Decl. at ¶ 70.

The Receiver also opened a trust account to deposit proceeds from the sale of assets and any other receipts, and to pay expenses to operate during the Receivership.  Oct & Nov Operating Report at 7:17-18.  From the commencement of the Receivership to December 20, 2024, the Receiver collected $18,456,377 comprised of:

- $15,414,027 of funds collected by the Receiver from sales of 2023 Inventory (including collection of Accounts Receivable for pre-Receivership sales); and

- $3,042,350 of funds collected by the Receiver from sales of 2024 Inventory (including collection of Accounts Receivable for pre-Receivership sales).

Stapleton Decl. at ¶ 71.  Of the above-mentioned amounts collected by the Receiver, $3,352,987 has been expended to fund operating expenses of Touchstone and the Receivership Property as of December 20, 2024.  *Id.* at 72.  Thus, as of December 20, 2024, the Receiver had $15,103,390 in cash on hand comprised of (i) $ 12,061,040 of proceeds from 2023 Inventory and (ii) $3,042,350 of proceeds from 2024 Inventory. *Id.*  The Receiver believes a cash reserve of $3 million from the 2023 Inventory proceeds will be sufficient to continue funding the ongoing operating expenses of the Receivership for the purpose of liquidating the Receivership Property.  *Id.*at ¶ 73.  The Receiver also expects he will recover significant additional

amounts through his continued collection of outstanding Accounts Receivable, liquidation of remaining Inventory, and sale of other Receivership Property, including the Facility. *Id.*

### D. U.S. Bank's Liens on the Receivership Property

The Receiver understands that U.S. Bank obtained and perfected a lien on the Inventory and Accounts Receivable (and the proceeds thereof) prior to the commencement of the Receivership. *See* Stapleton Decl., Ex. A. To date, the Receiver is not aware of any other party who has filed a UCC-1 financing statement with the California Secretary of State or otherwise asserted a security interest in the Inventory or Accounts Receivable (or proceeds thereof), other than certain Producer Liens discussed below. *Id.*

### E. Producer Liens on Inventory and its Proceeds

Setting aside the Excluded 2023 Non-Maricopa Growers,[5] the Grower Agreements for (i) each of the Maricopa Growers, (ii) the 2023 Non-Maricopa Growers *other than* THRT and Yellow Hotel, and (iii) the 2024 Non-Maricopa Growers *other than* Yellow Hotel, contain the following "Producer's Lien Waiver" in paragraph 18 (the "Producer Lien Waiver"):

> **PRODUCER'S LIEN WAIVER**: Grower expressly waives and releases any lien against the Product to which Grower may be entitled under Sections 55631 through 55653 of the Food and Agriculture Code of the State of California, and any other producer's lien or statutory lien to which Grower may be entitled. Grower understands and acknowledges the significance and consequence of the specific waivers of these liens, including the producer's lien provided in Sections 55631 through 55653 of the Food and Agriculture Code of the State of California.

Stapleton Decl., Exs. D-GGG at ¶ 18; Dkt. 75-1, Exs. A-K at ¶ 18. Additionally, as noted above, even if the Subordinated Maricopa Growers had not waived their Producer Liens on the Inventory, those liens would be expressly subordinated to U.S. Bank's liens unless and until Touchstone satisfies its payment obligations to U.S. Bank. *See* Stapleton Decl., Exs. B-C. As a result, the Receiver believes that, absent

---

[5] The Receiver is still investigating whether three 2023 Non-Maricopa Growers – Michelle R Thompson, Nili Panoche-Beck-Nili, and OMT Pistachio LP (together, the "Excluded 2023 Non-Maricopa Growers") – executed Producer Lien Waivers (defined below). Stapleton Decl. at ¶ 69. Nevertheless, Touchstone's books and records reflect that these three Growers, in the aggregate, are owed no more than $850,000 for 2023 Inventory delivered to Touchstone. *Id.* To the extent the Excluded 2023 Non-Maricopa Growers did not execute Producer Lien Waivers, the Receiver is reserving sufficient 2023 Inventory sale proceeds to pay these amounts if necessary. *Id.*

U.S. Bank's consent, THRT and Yellow Hotel are the only Growers entitled to payment on account of Producer Liens at this time.

According to Touchstone's books and records, THRT and Yellow Hotel are owed the following amounts on account of 2023 Inventory and/or 2024 Inventory delivered to Touchstone:

| Grower | 2023 Amount Owed |
|---|---|
| THRT | $118,364.00 |
| Yellow Hotel | $42,782.00 |

| Grower | 2024 Amount Owed |
|---|---|
| Yellow Hotel | $270,982.46 |

*Id.* at ¶ 74.

Notwithstanding the foregoing, the Receiver has been informed by U.S. Bank that it has agreed, pursuant to a settlement agreement, to recognize asserted Producer Liens by members of the Coleman Group on the proceeds of Inventory sales, which shall be paid as follows upon distribution of such proceeds:

| Grower | 2023 Amount Owed | 2024 Amount Owed | Total Claim Amount |
|---|---|---|---|
| Coleman | $104,632.83 | $218,790.10 | $323,422.93 |
| Schoettler | $25,678.38 | $60,005.72 | $85,684.10 |
| Norag | $16,915.63 | $0.00 | $16,915.63 |
| Huron | $28,812.00 | $0.00 | $28,812.00 |
| Pat Henry | $47,464.50 | $0.00 | $47,464.50 |
| Porterville | $23,726.25 | $0.00 | $23,726.25 |
| Firestone | $35,905.87 | $0.00 | $35,905.87 |
| SLO | $102,967.00 | $0.00 | $102,967.00 |

*Id.* at ¶ 75.

To the Receiver's knowledge, neither Costamagna nor any of the other Growers with Producer Lien Waivers in their Grower Agreements have reached an agreement with U.S. Bank that would supersede the express terms of the Producer Lien Waivers in their Grower Agreements. *Id.* at ¶ 76.

### F.    Proposed Disbursement

As noted above, the Receiver intends to retain $3 million to continue funding the ongoing operating expenses of Touchstone and his liquidation of the Receivership Property.  *Id.* at ¶ 73.[6]  The Receiver accordingly seeks to disburse the following Proceeds:

- **2023 Inventory Proceeds:**

| Secured Creditor | Disbursement Amount |
|---|---|
| Coleman | $104,632.83 |
| Shoettler | $25,678.38 |
| Norag | $16,915.63 |
| Huron | $28,812.00 |
| Pat Henry | $47,464.50 |
| Porterville | $23,726.25 |
| Firestone | $35,905.87 |
| SLO | $102,967.00 |
| THRT | $118,364.00 |
| Yellow Hotel | $42,782.00 |
| U.S. Bank | $8,513,791.54 |
| **Total** | **$9,061,040.00** |

- **2024 Inventory Proceeds:**

| Secured Creditors | Disbursement Amount |
|---|---|
| Coleman | $218,790.10 |
| Shoettler | $60,005.72 |
| Yellow Hotel | $270,982.46 |
| U.S. Bank | $2,492,571.72 |
| **Total** | **$3,042,350.00** |

## III.    Argument

### A.    The Secured Creditors have a Senior Priority Right to Receive the Proceeds

#### 1.    U.S. Bank's Senior Priority Blanket Lien on Receivership Property

The Receiver is charged with liquidating the Receivership Property for the ultimate purpose of paying the valid claims of Touchstone's creditors.  Receivership Ord. at ¶ C.  To the extent those creditors have a security interest in or other lien on Receivership Property, those creditors are entitled to receive the

---

[6] As noted above, this amount includes a reserve sufficient to pay amounts allegedly owed to the Excluded 2023 Non-Maricopa Growers if and when the Receiver determines such amounts are secured by Producer Liens.  *See* Stapleton Decl. at ¶ 69.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

proceeds of such property upon liquidation in accordance with their respective priorities of payment under applicable law. *See, e.g.*, *Redding Bank of Com. v. Keser*, No. 2:13-CV-01756-JAM, 2014 WL 1665239, at *7 (E.D. Cal. Apr. 24, 2014) (approving distribution of remaining receivership funds in accordance with lien priority). Touchstone's books and records, consistent with the Receiver's own diligence, reflect that Touchstone granted U.S. Bank a first-priority blanket lien and security interest in and lien on the Receivership Property to secure amounts loaned under the Credit Agreement. *See* Stapleton Decl. at ¶ 2, Ex. A. And the stipulated Receivership Order provides that the Receivership Property is coextensive with the "Collateral" securing the debt owed to U.S. Bank. Receivership Ord. at ¶ 2.

The Receiver is not aware of any dispute regarding the priority and extent of U.S. Bank's liens. Stapleton Decl. at ¶ 77. In the Forbearance Agreement, Touchstone acknowledged U.S. Bank's "perfected first priority liens upon and security interests in" the Receivership Property to secure repayment of the outstanding amounts owed under the Credit Agreement.[7] Dkt. 1, Ex. 2 at § 3.4. Based on the Receiver's diligence, no other party has filed a UCC-1 financing statement with the California Secretary of State with respect to the Receivership Property at issue here.[8] Stapleton Decl., Ex. A. Unless other Touchstone creditors are entitled to priority payment as a matter of law (or pursuant to an agreement with U.S. Bank), U.S. Bank would be entitled to receive the proceeds of Inventory and Accounts Receivable.

### 2.  Senior Priority Producer Liens on Inventory and the Proceeds Thereof

Pursuant to Section 55631 of the California Food and Agricultural Code, "[e]very producer of any farm product that sells any product that is grown by him or her to any processor under contract, express or implied" has a Producer Lien "upon that product and upon all processed or manufactured forms of that farm product," to the extent of the agreed price for the product under contract, and there are "no formal requirements to perfect the lien, such as recording or filing." Cal. Food & Agr. Code, § 55631; *In re*

---

[7] In the Forbearance Agreement, Touchstone acknowledged the outstanding amount owed to U.S. Bank was $113,283,148.52 as of October 23, 2023. Dkt. 1, Ex. 2. In its Complaint in this action, U.S. Bank asserts that the outstanding principal balance under the Credit Agreement had been reduced to $71,750,000, exclusive of interest, reimbursable costs and expenses and other charges under the Credit Agreement. *See* Dkt. 1 at 7: 7-10. In any event, the amount owed to U.S. Bank and secured by the Receivership Property appears to vastly exceed the amount of the proposed disbursement to U.S. Bank.

[8] The only non-terminated UCC-1 of record was filed by Toyota Industries Commercial Finance, Inc. with respect to certain equipment not at issue in this Motion. *See* Stapleton Decl., Ex. A.

*Loretto Winery Ltd.*, 898 F.2d 715, 722 (9th Cir. 1990).  A Producer Lien is senior in priority "to all other liens, claims, or encumbrances," including prior perfected security interests in the farm products, *except* (i) certain wage and salary labor claims, and (ii) warehouseman's liens.  Cal. Food & Agr. Code, § 55633.  Thus, the Receiver understands that *absent a waiver, release, or subordination agreement*, the Growers would have priming senior lien on the applicable Inventory or its proceeds.

Touchstone's books and records and the Receiver's diligence confirm that almost all of the Growers who delivered 2023 and 2024 pistachio product to Touchstone expressly waived their right to assert Producer Liens on the Inventory or its proceeds via the contractual Producer Lien Waiver in their respective Grower Agreements.[9] Stapleton Decl., Exs. D-GGG at ¶ 18; Dkt. 75-1, Exs. A-K at ¶ 18.  Specifically, the Receiver's diligence to date has only revealed two Growers whose Grower Agreements *did not* contain the Producer Lien Waiver: THRT and Yellow Hotel.  Stapleton Decl., Ex. CCC at ¶ 18; Dkt. 75-1, Ex. K at ¶ 18.[10]  In addition, even if the Maricopa Growers did not expressly waive Producer Lien rights, each of the Subordinated Maricopa Growers (other than the two Unsubordinated Maricopa Growers) expressly subordinated those liens to U.S. Bank – meaning those lien rights would only entitle those Growers to priority in the event U.S. Bank is paid in full.  Stapleton Decl., Ex. B-C.

Thus, absent agreement by U.S. Bank, no Grower is entitled to senior priority payment of any Proceeds other than THRT and Yellow Hotel.  The Receiver understands that U.S. Bank has reached such an agreement with the Coleman Group to recognize their asserted Producer Lien rights in agreed-upon amounts.  *Id.* at ¶ 75.  Thus, the Receiver has proposed to make the Disbursement (i) first to THRT, Yellow Hotel and the Coleman Group, on account of their senior priority Producer Liens, and (ii) the remaining balance to U.S. Bank.  Doing so will result in satisfaction of all amounts owed to THRT, Yellow Hotel

---

[9] The Receiver is not aware of any statutory prohibition of contractual waivers of Producer Liens.  In fact, courts have held that growers can waive their Producer Lien rights contractually under California law if the waiver was "voluntary, knowing and done with adequate awareness of the relevant circumstances and likely consequences."  *In re GVF Cannery, Inc.*, 202 B.R. 140, 145 (N.D. Cal. 1996) (citing *Bauman v. Islay Invs.*, 106 Cal. Rptr. 889, 893 (Cal. Ct. App. 1973)).  Here, the Producer Lien Waivers executed by each of the applicable Growers contains an express representation that such Grower "understands and acknowledges the significance and consequence of the specific waivers of these liens[.]"  *See* Stapleton Decl., Exs. D-BBB, DDD-GGG at ¶ 18; Dkt. 75-1, Ex. A-J.

[10] As noted above, the Excluded 2023 Non-Maricopa Growers are the only Growers for which Receiver is still conducting diligence with respect the Producer Lien Waivers.  *See* Stapleton Decl. at ¶ 69.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

and the Coleman Group on account of such senior liens, and a material reduction in the outstanding amount owed to U.S. Bank – a reduction that the Receiver understands will also reduce the amount of interest accruing on such loans.

The Court has authority to determine that, other than the Secured Creditors, no other persons or entities have established a right to receive any portion of the Disbursement, including any statutory Producer Liens on the Inventory or its proceeds, because the Growers have adequate notice and opportunity to object to the requested relief.  *See S.E.C. v. Copeland*, 645 F. App'x 596, 597 (9th Cir. 2016) ("The district court did not deny Tri Tool due process by summarily deciding Tri Tool's claims [in connection with Receiver's interim distribution of assets]. . . . Tri Tool had notice and opportunity to be heard."); *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) ("To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings.");  *S.E.C. v. Am. Cap. Invs., Inc.*, 98 F.3d 1133, 1146–47 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ("For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard.") (citing *S.E.C. v. Wencke*, 783 F.2d 829, 836–38 (9th Cir. 1986), *cert. denied*, 479 U.S. 818, 107 S.Ct. 77, 93 L.Ed.2d 33 (1986)); *U.S. v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984) ("Receivership courts have the general power to use summary procedure in allowing, disallowing, and subordinating the claims of creditors.").  Here, the Receiver is providing notice of this Motion to all Growers who are owed outstanding amounts for delivery of 2023 and 2024 Inventory.[11] Thus, unless such Growers present competent evidence to refute their express waivers (and/or

---

[11] Those Growers also received notice of the Receiver's intent to adjudicate the disputed extent, validity, and priority of their Producer Liens via the Receiver's prior motion to clarify his authority to continue selling Inventory.  *See* Dkt. 61 at 4:16-17 ("The extent, priority and validity of any such Producer Liens will be the subject of a forthcoming motion by the Receiver."), 10:26-28 ("The Receiver understands there may be disputes regarding the extent, priority or validity of various asserted Producer Liens, including based on express waivers by certain Growers of such lien rights in their agreements with Touchstone. . . the Receiver reserves all rights with respect to the same."); *see* Dkt. 63 (proof of service of Dkt. 61 on all Growers); *see also Wencke*, 783 F.2d at 838–39 (rejecting argument that 19-day notice period before disgorgement hearing violated due process rights where parties were aware the receiver was seeking disgorgement well before hearing notice).

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

1  subordination) of Producer Lien rights, the Court can and should determine that only the Secured Creditors

2  have a right to receive a portion of the Disbursement.

3  **B.    The Proposed Distribution Is Fair and Reasonable**

4          A district court's power to supervise a receivership and determine "the appropriate action to be

5  taken in the administration of the receivership is extremely broad" and "[r]easonable administrative

6  procedures, crafted to deal with the complex circumstances of each case, will be upheld." *S.E.C. v. Hardy*,

7  803 F.2d 1034, 1037-38 (9th Cir. 1986).  The Ninth Circuit has recognized that "[a] district judge simply

8  cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries

9  absent broad discretionary power." *Id.* at 1038.

10         This broad discretion authority to supervise and craft administrative procedures in receivership

11  extends to the distribution of receivership assets to creditors—the proposed distribution merely needs to

12  be fair and reasonable.  *See S.E.C. v. Bivona*, No. 16-CV-01386-EMC, 2017 WL 4022485, at *6 (N.D.

13  Cal. Sept. 13, 2017) ("In exercising its equitable powers, the Court must ultimately determine how the

14  Receivership's assets should be distributed to Defendants' investors and creditors.  In reviewing a

15  prospective plan, the Court must 'satisf[y] itself that the distribution of proceeds ... is fair and

16  reasonable.'") (quoting *S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)); *S.E.C. v. Forex Asset Mgmt. LLC*,

17  242 F.3d 325, 331 (5th Cir. 2001) ("[W]e analyze the district court's decision to approve the Receiver's

18  distribution plan for an abuse of discretion because the district court was acting pursuant to its inherent

19  equitable powers when it approved the plan. . . .") (internal quotations and citations omitted); *see also*

20  *Liberte*, 462 F.3d at 551 ("The receiver's role, and the district court's purpose in the appointment, is to

21  safeguard the disputed assets, administer the property as suitable, and to assist the district court in

22  achieving a final, equitable distribution of the assets if necessary.").

23         District courts regularly order interim or preliminary distributions of assets.  *See, e.g.*, *S.E.C. v.*

24  *Cap. Consultants, LLC*, 397 F.3d 733, 736 (9th Cir. 2005); *S.E.C. v. Black*, 163 F.3d 188, 193 (3d Cir.

25  1998); *CFTC v. PrivateFX Global One*, 778 F. Supp. 2d 775, 778 (S.D. Tex. 2011); *S.E.C. v. Amerifirst*,

26  No. 3:08-CV-1188-D, 2008 WL 919546, at *6-7 (N.D. Tex. Mar. 13, 2008); *CFTC v. Eustace*, No. 05-

27  2973, 2008 WL 471574, at *7 (E.D. Pa. Feb. 19, 2008); *S.E.C. v. Merrill Scott & Assocs., Ltd.*, No. 2:02-

28  CV-39, 2006 WL 3813320, at *1 (D. Utah Dec. 26, 2006); *S.E.C. v. McKnight*, No. 08-11887, 2012 WL

15

2061030, at *1 (E.D. Mich. June 7, 2012); *CFTC v. Oasis Int'l Grp., Ltd.*, No. 8:19-CV-886-VMC-SPF, 2024 WL 1539657, at *2 (M.D. Fla. Mar. 22, 2024).  Specifically, district courts can make interim distributions to secured creditors upon the liquidation of a portion of their collateral, in accordance with the lien priorities established by the evidence.  *See, e.g.*, *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co., Inc.*, No. 14-10527, 2015 WL 13021657, at *2 (E.D. Mich. Nov. 9, 2015); *Am. State Bank v. Van De Nieuwegiessen*, No. CIV-09-322-L, 2009 WL 3152927, at *4 (W.D. Okla. Sept. 24, 2009).  Furthermore, district courts have approved interim distributions of assets to a plaintiff even where final adjudication of such plaintiff's claim to priority over receivership assets is pending.  *See, e.g., Kelley v. Kelley*, No. 1:18-CV-11692-IT, 2019 WL 6841818, at *1 (D. Mass. Dec. 16, 2019) (authorizing interim distribution despite contingent priority claims of other creditors).

Here, the Receiver's proposed Disbursement is fair and reasonable because the Secured Creditors are entitled to receive the Proceeds on account of their senior priority liens.  The Secured Creditors are the only parties the Receiver has determined have lien rights in and on the 2023 Inventory, the 2024 Inventory and the relevant Accounts Receivable (and/or proceeds thereof), and the Receiver is retaining sufficient funds to account for the ongoing diligence regarding the Excluded 2023 Non-Maricopa Growers.  Although the exact amount of U.S. Bank's secured claim has not yet been fully and finally adjudicated, the Receiver is not aware of any dispute regarding U.S. Bank's rights in and on the Receivership Property, and the amount owed to U.S. Bank under the Loan Documents appears to vastly exceed the amount proposed to be disbursed to that creditor.  Stapleton Decl. at ¶ 77.  Accordingly, the Receiver respectfully submits it is well within the Court's discretion to approve the Disbursement.

## IV.    Conclusion

For all the reasons set forth above, the Receiver respectfully submits good cause exists for the Court to enter an order, in the form attached hereto as **Exhibit 1**, authorizing the Receiver to make the Disbursement to the Secured Creditors, and determining that, other than the Secured Creditors, no other persons or entities have established a right to receive any portion of the Disbursement, including pursuant to any Producer Liens on the Inventory or its proceeds.

1

2

DATED: December 30, 2024    Respectfully submitted,

COVINGTON & BURLING LLP

3

4

By: */s/ Joseph R. Dunn*

Joseph R. Dunn (State Bar No. 238069)

5

jdunn@cov.com

Julia Philips Roth (State Bar No. 324987)

6

jphilipsroth@cov.com

COVINGTON & BURLING LLP

7

1999 Avenue of the Stars

8

Los Angeles, California 90067-4643

Telephone: + 1 (424) 332-4800

9

Facsimile: + 1 (424) 332-4749

10

Counsel for Receiver

DAVID P. STAPLETON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS

**Appendix I**

**2023 and 2024 Maricopa Growers**

| Maricopa Grower | 2023 Inventory | 2024 Inventory | Subordinated | Producer Lien Waiver |
|---|---|---|---|---|
| A&H Investments, LLC | X | X | X | X |
| ACAP Farms, LLC | X | X | X | X |
| ACDF, LLC | X | | X | X |
| Bear Flag Farms, LLC | X | | X | X |
| Cantua Orchards, LLC | X | | X | X |
| C&A Farms, LLC | X | | X | X |
| FFGT Farms, LLC | X | | X | X |
| GoldStar Investment Group, LLC | X | | | X |
| Gradon Farms, LLC | X | | X | X |
| Granville Farms, LLC and Granville GPEH split | X | | X | X |
| Kamm South, LLC | X | | | X |
| Lincoln Grantor Farms, LLC | X | | X | X |
| Manning Avenue Pistachios, LLC | X | | X | X |
| Maricopa Orchards, LLC | X | | X | X |
| Panoche Pistachios, LLC, Panoche GPEH split, and Panoche Panoche-Beck-Nili | X | | X | X |
| Sageberry Farms, LLC | X | | X | X |

## Appendix II

### 2023 and 2024 Non-Maricopa Growers

| Non-Maricopa Grower | 2023 Inventory | 2024 Inventory | Producer Lien Waiver |
|---|---|---|---|
| A & T Romero | X | | X |
| ABC Farms Inc | X | | X |
| Abdul Awal Hanifi | X | | X |
| Ahmad Emami; | X | | X |
| Avellar-Moore Farms LP | X | | X |
| Beck Family Orchards and Beck Panoche-Beck-Nili | X | | X |
| BTV Crown Farms LLC | X | X | X |
| Chad Crivelli | X | X | X |
| Coleman | X | X | X |
| CF4 | X | X | X |
| CFL | X | X | X |
| DJ Farms | X | | X |
| Dumar, LLC | X | | X |
| Eddie Brooks-Velasquez (Chase Brooks Ranch) | X | | X |
| Etchegaray Farms, LLC | X | | X |
| Firestone | X | | X |
| Gold Leaf Farming - GLF11, GLF13, GLF16, GLF20, and GLF22 | X | | X |
| Golden R, Inc. | X | | X |
| Huron | X | | X |
| JP Farms | X | | X |
| KMS Pistachios LLC | X | | X |
| Macias Ranch Dinuba, LLC | X | | X |
| Malakan Investments, LLC | X | | X |
| Mark Trinkle | | X | X |
| Mauricio Macias | X | X | X |
| Michelle R Thompson | X | | *[1] |
| Millennium Acquisitions, LLC | X | | X |
| MP Farms | X | | X |
| Naginder Bains | X | | X |
| Nili Panoche-Beck-Nili | X | | *[1] |
| Norag | X | | X |
| Olam Farming, Inc. | X | | X |
| OMT Pistachio LP | X | | *[1] |
| Pat Henry | X | | X |
| Pistache, LLC | X | | X |
| Porterville | X | | X |
| Premiere Agricultural Properties, LLC | X | | X |
| R & R Family Holdings LLC | X | | X |
| Richard Lopez Farms | X | | X |
| Rosalio F. Barraza | X | X | X |

[1] The Receiver is still investigating whether the Excluded 2023 Non-Maricopa Growers—Michelle R Thompson, Nili Panoche-Beck-Nili, and OMT Pistachio LP—executed Producer Lien Waivers.

| Non-Maricopa Grower | 2023 Inventory | 2024 Inventory | Producer Lien Waiver |
|---|---|---|---|
| Roxana Farm Holdings | X | | X |
| S & K Trust | X | | X |
| Salehi Farms | X | | X |
| Schoettler | X | X | X |
| SKDD Trust | X | | X |
| SLO | X | | X |
| Sol Aureus Farms LP | X | | X |
| Terra Bella Ranch LLC | X | | X |
| THRT | X | | |
| Torbat Farms, LLC | X | | X |
| Triple F Ranch | X | | X |
| US Horticulture Farmland, LLC | X | | X |
| Varoojan & Monica Mirzayan | X | | X |
| Yellow Hotel | X | X | |

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDER
AUTHORIZING INTERIM DISBURSEMENT TO CERTAIN SECURED CREDITORS