1  JOSEPH R. DUNN (State Bar No. 238069)
2  jdunn@cov.com
   JULIA PHILIPS ROTH (State Bar No. 324987)
3  jphilipsroth@cov.com
   COVINGTON & BURLING LLP
4  1999 Avenue of the Stars
   Los Angeles, California 90067-4643
5  Telephone: + 1 (424) 332-4800
   Facsimile: + 1 (424) 332-4749
6

7  Counsel for Receiver
   DAVID P. STAPLETON
8
                    UNITED STATES DISTRICT COURT
9       EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

10 U.S. BANK NATIONAL ASSOCIATION,          Case No. 1:24-cv-01105-KES-SAB

11                  Plaintiff,              **RECEIVER DAVID P. STAPLETON'S**
12         vs.                              **NOTICE OF MOTION AND MOTION**
                                            **FOR ORDERS APPROVING CERTAIN**
13 TOUCHSTONE PISTACHIO COMPANY, LLC;       **BIDDING PROCEDURES AND BID**
   FARSHID ASSEMI; FARID ASSEMI; DARIUS     **PROTECTIONS AND CONFIRMING THE**
14 ASSEMI; NEEMA ASSEMI; MELISSA LAYNE;     **SALE OF CERTAIN REAL AND**
   SONIA ROSEMARY ASSEMI; MARICOPA          **PERSONAL PROPERTY**
15 ORCHARDS, LLC; C&A FARMS, LLC; ACDF,
   LLC; CANTUA ORCHARDS, LLC; LINCOLN       Proposed Bidding Procedures Hearing:[1]
16 GRANTOR FARMS, LLC; PANOCHE             Date:      March 5, 2025
   PISTACHIOS, LLC; ADAMS GRANTOR LAND,     Time:      1:30 p.m. PT
17 LLC; GRANVILLE FARMS, LLC; SAGEBERRY     Location:  Courtroom 6, 7th floor
   FARMS, LLC; GRADON FARMS, LLC;                      2500 Tulare Street
18 MANNING AVENUE PISTACHIOS, LLC;                     Fresno, CA  93721
   ASSEMI AND SONS, INC.; WINSTON FARMS,    Judge:     Hon. Kirk E. Sherriff
19 LLC; FFGT FARMS, LLC; FAVIER RANCH,
   LLC; GRANTLAND FARMS, LLC;               Proposed Sale Confirmation Hearing:
20 WHITESBRIDGE FARMS, LLC; ACAP FARMS,     Date:      April 7, 2025
   LLC; BEAR FLAG FARMS, LLC; COPPER        Time:      1:30 p.m. PT
21 AVENUE INVESTMENTS, LLC; WILLOW          Location:  Courtroom 6, 7th floor
   AVENUE INVESTMENTS, LLC; ASHLAN &                   2500 Tulare Street
22 HAYES INVESTMENTS, LLC; ASSEMI                      Fresno, CA  93721
   BROTHERS, LLC,                           Judge:     Hon. Kirk E. Sherriff
23
                   Defendants.              Action Filed:  September 17, 2024
24

25

26

27 _____
   [1] As explained in the Ex Parte Application (defined below) filed concurrently herewith, Receiver seeks
28 approval of the Bidding Procedures (defined below) on shortened time, pursuant to Rule 233 of the Local
   Rules of Practice for the United States District Court, Eastern District of California.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 5, 2025, at 1:30 p.m. PT, or as soon thereafter as the matter can be heard, in Courtroom 6, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, David P. Stapleton, in his capacity as the duly appointed receiver (the "Receiver") will, and hereby does, by and through his undersigned counsel, move the Court for an order:

**(1)** approving certain marketing, noticing, bidding, and sale procedures (the "Bidding Procedures") and certain terms of the purchase and sale agreement (the "Stalking Horse PSA") entered into by Zamora Pistachio, LLC (the "Stalking Horse Bidder") and the Receiver in connection with a proposed sale of:

(i) the real property consisting of that certain property identified in the Tulare County real property records as Assessor Parcel Numbers 319-130-25 and 319-130-26, inclusive of the real property located at 19570 Ave. 88, Terra Bella, CA 93270 in Tulare County, California, together with (a) the pistachio processing facility and all other buildings, structures, improvements and fixtures located thereon, and (b) all rights, privileges, easements, rights and rights-of-way appurtenant thereto or used in connection therewith (collectively, the "Real Property"),

(ii) personal property located at the Real Property that is owned by Touchstone and currently used by Touchstone in its operations thereon (the "Terra Bella Personal Property"),

(iii) the equipment identified in Schedule 2.1.1(a)(vi) to the Stalking Horse PSA (the "Lot 1 Additional Equipment"; together with the Real Property and Terra Bella Personal Property, "Lot 1"), and

(iv) the equipment identified in Schedule 2.1.1(b) to the Stalking Horse PSA ("Lot 2"; together with Lot 1, the "Lots" and each a "Lot"),[2] and

---

[2] The assets described in (i)-(iv) are collectively referred to herein as the "Assets." The term Assets used herein shall mean the "Acquired Assets," as such term is defined in the Stalking Horse PSA. For the avoidance of doubt, the Assets shall not include any "Excluded Assets," as that term is defined in the Stalking Horse PSA. The Excluded Assets include, among others, Touchstone's (i) cash, (ii) prepayments, deposits, and similar rights, (iii) any Good Faith Deposits (defined below) held by the Receiver, (iv) accounts receivable, (v) crop inventory, (vi) computers, monitors, tablets, and other technology unrelated to the Assets, (vii) leased personal property, (viii) books and records, (ix) intellectual property, (x) claims and causes of action, and (xi) insurance policies. Potential Bidders should refer to the description of (continued...)

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

(2)     scheduling a hearing for April 7, 2025, at 1:30 p.m. PT, or as otherwise ordered by the Court, at which the Receiver will request the Court enter an order confirming a sale of the Assets free and clear of all monetary liens, claims and encumbrances.

In support of the requested relief, the Receiver relies upon this Notice of Motion and Motion, including the Memorandum of Points and Authorities set forth below (the "Motion"), Paragraph 3 of the Court's Order Appointing Receiver (the "Receivership Order") [Dkt. 32], the declaration of David P. Stapleton (the "Stapleton Declaration") attached hereto as **Exhibit 1**, the declaration of Scott Porter (the "Porter Declaration") attached hereto as **Exhibit 2**, *Receiver's Ex Parte Application to (I) Shorten Time on Receiver's Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of the Assets and (II) Authorize Receiver to Engage Cascadia Capital, LLC as Marketing Agent* filed concurrently herewith (the "Ex Parte Application"), the other files and records in this action, and any other evidence or argument the Court may consider.

In accordance with Section I.C of this Court's Standing Order in Civil Cases, this Motion is made following multiple conferences of counsel with (i) Mr. Joseph VanLeuven, counsel for plaintiff U.S. Bank, (ii) Mr. David Hurst, Mr. Robert Barton, and Ms. Jane Kim, counsel for defendant Touchstone and certain other defendants (the "Touchstone Defendants"),[3] and (iii) Ms. Beth Young, counsel for certain other defendants (the "Guarantor Defendants").[4]  The Receiver's undersigned counsel hereby certifies that meet and confer efforts with such parties have been exhausted.  On information and belief, U.S. Bank supports granting the Motion.  The Touchstone Defendants and the Guarantor Defendants have not yet determined what position they will take on the relief sought in the Motion.

---

"Excluded Assets" in the Stalking Horse PSA for a full description of such assets which are not subject to these Bidding Procedures.

[3] The Touchstone Defendants represented by Mr. Hurst, Mr. Barton and Ms. Kim are identified at Dkt. 27.

[4] The Guarantor Defendants represented by Ms. Young are identified at Dkt. 60.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

DATED: February 28, 2025                    COVINGTON & BURLING LLP

                                            By: /s/ Joseph R. Dunn

                                            Joseph R. Dunn (State Bar No. 238069)
                                            jdunn@cov.com
                                            Julia Philips Roth (State Bar No. 324987)
                                            jphilipsroth@cov.com

                                            Counsel for Receiver
                                            DAVID P. STAPLETON

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

## Table of Contents

I.    Introduction ...................................................................................................... 1

II.   Factual Background ......................................................................................... 2

      A.    General Case Background................................................................... 2

      B.    Sale Authority Under the Receivership Order ........................................ 5

      C.    Marketing of the Assets .................................................................... 6

      D.    Proposed Bidding Procedures ............................................................ 8

      E.    The Stalking Horse PSA and Break-Up Fees ...................................... 14

III.  Argument ...................................................................................................... 15

      A.    The Proposed Bidding Procedures and Break-Up Fees Comply with the
            Receivership Order and Applicable Law and Should Be Approved ................... 16

            1.    The Notices and Auction Proposed in the Bidding Procedures Satisfy the
                  Requirements for a Public Sale Under 28 U.S.C. §§ 2001(a) and 2002 ... 16

            2.    The Bidding Procedures and Break-Up Fees Each Represent a Sound
                  Exercise of the Receiver's Business Judgment......................................... 19

      B.    The Court Has Ample Authority to Approve the Sale of the Assets Pursuant to the
            Proposed Bidding Procedures ......................................................... 23

IV.   Conclusion .................................................................................................... 25

1

## Table of Authorities

2

**CASES**

3

*Alter Domus, LLC v. Winget*,
    No. 08-CV-13845, 2021 WL 9145012 (E.D. Mich. Mar. 4, 2021) ..................................... 25

4

5

*Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*,
    172 F.2d 416 (10th Cir. 1949) ....................................................................................... 17

6

7

*CFTC v. Topworth Int'l, Ltd.*,
    205 F.3d 1107 (9th Cir. 1999), *as amended* (Mar. 23, 2000) .............................................. 15

8

*Gockstetter v. Williams*,
    9 F.2d 354 (9th Cir. 1925) ............................................................................................ 15

9

10

*In re Casa Systems, Inc.*,
    Case No. 24-10695 [ECF Dkt. Nos. 223, 419] (Bankr. D. Del. April 26, 2024)................................ 24

11

12

*In re Celadon Group, Inc.*,
    Case No. 19-12606 (KBO) [ECF Dkt. Nos. 417, 418] (Bankr. D. Del. Jan. 31, 2020)....................... 24

13

*In re Coldwater Creek*,
    Case No. 14-10867, [ECF Docket No. 439] (Bankr. D. Del. May 22, 2014)................................. 24

14

15

*In re Dots*,
    Case No. 14-11016, [ECF Docket No. 132] (Bankr. D. N.J. Feb. 27, 2014) .................................. 24

16

*In re Loehmann's Holdings Inc.*,
    Case No. 13-14050, [ECF Docket No. 200] (Bankr. S.D.N.Y. Jan. 7, 2014) .................................. 24

17

18

*In re Love Culture*,
    Case No. 14-24508, [ECF Docket No.157] (Bankr. D. N.J. Aug. 7, 2014) ................................... 24

19

20

*In re Pacific Monarch Resorts, Inc.*,
    Case No. 8:11-bk-24720-SC [ECF No. 200] (Bankr. C.D. Cal. Jan. 13, 2023) ............................... 24

21

*In re Taronis Fuels, Inc.*, et al.,
    Case No. 22-11121 [ECF Dkt. No. 135] (Bankr. D. Del. Dec. 12, 2022) .................................. 24

22

23

*Revere Copper & Brass v. Adriance Mach. Works*,
    68 F.2d 708 (2d Cir. 1934)............................................................................................ 19

24

25

*S.E.C. v. Champion-Cain*,
    No. 3:19-CV-1628-LAB-AHG, 2020 WL 2309270 (S.D. Cal. May 8, 2020) ........................ 17, 18, 24

26

27

*S.E.C. v. EquityBuild, Inc.*,
    No. 18 CV 5587, 2019 WL 1953117 (N.D. Ill. May 2, 2019)....................................... 19, 20

28

*S.E.C. v. Goldfarb*,
    2013 U.S. Dist. LEXIS 118942 (N.D. Cal. 2013) ................................................ 16

*S.E.C. v. Hardy*,
    803 F.2d 1034 (9th Cir. 1986) .......................................................... 15, 21, 23

*S.E.C. v. Nguyen*,
    No. SACV1901174AGKESX, 2019 WL 12470145 (C.D. Cal. Nov. 4, 2019) .................................. 20

*SEC v. Am. Capital Invs.*,
    98 F.3d 1133 (9th Cir. 1996) .......................................................... 24

*SEC v. Capital Cove Bancorp LLC*,
    No. SACV 15-980-JLS (JCx), 2015 U.S. Dist. LEXIS 174856 (C.D. Cal. Oct. 13, 2015) ................ 20

*Southwestern Media, Inc. v. Rau*,
    708 F.2d 419 (9th Cir. 1983) .......................................................... 20

*Truist Bank v. AgTech Sci. Grp., LLC*,
    No. 521CV00190REWMAS, 2022 WL 1164920 (E.D. Ky. Mar. 25, 2022), *report and
    recommendation adopted*, No. 5:21-CV-190-REW-MAS, 2022 WL 1154601 (E.D. Ky. Apr. 19,
    2022) .......................................................................... 16

*U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP.*,
    No. CV 21-0502, 2024 WL 169574 (E.D. Pa. Jan. 16, 2024) ................................... 19

*United States v. Branch Coal Corp.*,
    390 F.2d 7 (3d Cir. 1968)................................................................ 19, 22

*United States v. Heasley*,
    283 F.2d 422 (8th Cir. 1960) .......................................................... 19

*United States v. Leak*,
    No. 5-17-CV-00454-FL, 2021 WL 1098484 (E.D.N.C. Feb. 17, 2021) ............................ 17

*United States v. Little*,
    No. CV-F-02-5141LJODLB, 2008 WL 2676808 (E.D. Cal. June 30, 2008) ........................ 19

*United States v. Nelson*,
    No. 520CV02084JWHSHK, 2022 WL 3588422 (C.D. Cal. July 26, 2022) ......................... 18

*United States v. Spencer*,
    No. 420CV00556GKFCDL, 2021 WL 5114315 (N.D. Okla. Sept. 23, 2021)........................ 18, 20, 22

*United States v. Vilhauer*,
    57 F. App'x 711 (8th Cir. 2003)......................................................... 19

*United States v. Weldon*,
    No. 118CV01318JLTSKO, 2023 WL 5596003 (E.D. Cal. Aug. 28, 2023), *reconsideration denied*,
    No. 118CV01318JLTSKO, 2023 WL 6163972 (E.D. Cal. Sept. 21, 2023)......................................... 18

**STATUTES**

11 U.S.C. § 2004....................................................................................................................... 16

11 U.S.C. § 363....................................................................................................................... 20

28 U.S.C. § 2001............................................................................................................. 16, 17, 19

28 U.S.C. § 2002......................................................................................................... 16, 17, 18, 19

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

1

2

## Memorandum of Points and Authorities

### I.    Introduction

Touchstone is the owner of the Real Property, where it operated a pistachio processing facility prior to the commencement of this action.  Since his appointment, the Receiver has continued limited processing operations at the Real Property to liquidate Touchstone's remaining crop inventory located there.  Now, in anticipation of completing his use of the facility for that purpose, the Receiver has commenced the process of marketing the Real Property and other Assets for sale.  By this Motion, the Receiver seeks the Court's approval of the sale process by which the Receiver proposes to comply with his obligations under the law and maximize the value of those assets for the benefit of creditors.

Specifically, the Receiver was appointed to liquidate substantially all of the real and personal property of Touchstone (the "Receivership Property"), including "by public or private sale or such other method as deemed appropriate by the Receiver exercising business judgment."  Receivership Ord. at ¶ 3; Dkt. 122 at ¶¶ 1-2.  The Receiver is empowered to "employ such sale procedures that the Receiver decides to employ in the exercise of the Receiver's discretion," provided that the sale of the Real Property must comply with 28 U.S.C. § 2001 and certain other requirements set forth in the Receivership Order.  Receivership Ord. at ¶ 3.  Furthermore, except as ordered by the Court after notice and a hearing or otherwise provided in the Receivership Order, the sale of the Assets shall be subject to the express written approval of U.S. Bank.  *Id.*

By this Motion, the Receiver seeks the Court's approval of certain proposed Bidding Procedures for a public sale process under 28 U.S.C. § 2001 *et seq.*, including approval of certain bid protections set forth in the Stalking Horse PSA, and at the conclusion of that process, confirmation of the sale of the Assets.  Specifically, the Receiver seeks the following relief by this Motion:

- Entry of an order in the form attached hereto as **Exhibit 3** (the "Proposed Bid Procedures Order") approving the Receiver's proposed Bidding Procedures in connection with the sale of the Assets, including the form and matter of notice and proposed timeline reflected therein,

and approving the terms and conditions of the proposed Break-Up Fees (defined below) set forth in the Stalking Horse PSA;[5] and

- Following completion of public sale process and a further hearing, entry of one or more orders authorizing and approving the sale of the Assets pursuant to each of the Successful Bid(s) or Back-Up Bid(s), as applicable, free and clear of all monetary liens, claims and encumbrances, in the form of order(s) to be filed with the Court in accordance with the Bidding Procedures (each, a "Proposed Sale Approval Order").

The objective of the proposed Bidding Procedures is to facilitate a fair, efficient, value-maximizing marketing and public sale process for the Assets. To that end, the Receiver submits that the proposed Bidding Procedures and Break-Up Fees (defined below) provide all potentially interested parties with sufficient opportunity to submit proposals and bid on the Assets and participate in an auction and overbid process to maximize the ultimate value obtained by the Receiver for those Assets. U.S. Bank agrees. As required by the Receivership Order, U.S. Bank approves of the Bidding Procedures, as well as the other relief requested in this Motion, including the Break-Up Fees (defined below). The Receiver further submits that the proposed Bidding Procedures and the terms of the proposed Stalking Horse PSA comply with the public sale requirements set forth 28 U.S.C. § 2001 *et seq.* and with all other applicable terms of the Receivership Order and applicable law.

For these reasons, as set forth more fully below, the Receiver seeks authority to conduct the marketing and sale process in accordance with the Proposed Bid Procedures Order, and, following the completion of such sale process, entry of the Proposed Sale Approval Order(s).

## II.    Factual Background

### A.    General Case Background

Prior to this receivership (the "Receivership"), Touchstone was in the business of purchasing and processing pistachio nuts and selling that crop inventory to third parties in the open market. Dkt. 17 at ¶¶

---

[5] Copies of the Bidding Procedures and the Stalking Horse PSA are attached to the Proposed Bid Procedures Order as Exhibit A and Exhibit B, respectively.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

2, 14, 23; Dkt. 20 at ¶¶ 1, 11. Touchstone is headquartered in Fresno, California, but operated primarily from its processing facility (the "Facility") located at the Real Property. Dkt. 1 at ¶¶ 2, 48.

On September 17, 2024, Plaintiff filed its Complaint for Breach of Credit Agreement, Breach of Guaranty Agreement, Breach of Forbearance Agreement, Judicial Foreclosure, Specific Performance, Appointment of Receiver, Replevin, and Injunctive Relief (the "Complaint") alleging Touchstone and its co-defendants are liable to Plaintiff in the amount of at least $72 million under that certain Credit Agreement dated as of March 20, 2020 by and among Touchstone as borrower, the financial institutions or entities party thereto as lenders (the "Lenders"), and U.S. Bank (as successor in interest to MUFG Union Bank, N.A. ("MUFG")) as administrative agent and collateral agent (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"). Dkt. 17 at ¶¶ 3-5, Ex. 1. Touchstone's obligations under the Credit Agreement are secured by (i) the collateral described in that certain Security Agreement dated as of March 20, 2020 by Touchstone, as borrower, in favor of U.S. Bank (as successor in interest to MUFG), as administrative agent and collateral agent (as amended, restated, supplemented or otherwise modified from time to time, the "Security Agreement") and (ii) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 14, 2020 (the "Terra Bella DOT"; together with the Credit Agreement, the Security Agreement, and any other reports, documents, instruments, agreements, certificates, and schedules executed or delivered pursuant to or in connection with the Credit Agreement, the "Loan Documents") in favor of U.S. Bank covering the Real Property, including the Facility.[6] Dkt. 17 at ¶¶ 3-5, Exs. 3-4; *see also* Dkt. 122 at ¶ 1.

On September 27, 2024, Plaintiff and Touchstone stipulated to the appointment of a receiver because, among other things, both parties "recognize the value in minimizing the cost and uncertainty of litigation, as well as maximizing the value of the assets that are in dispute as a result of the Complaint." Dkt. 31 at ¶ 5.

---

[6] Touchstone made, executed, and delivered the Terra Bella DOT to MUFG, as beneficiary. Dkt. 1, Ex. 4. The Receiver understands that U.S. Bank is the successor-in-interest to MUFG as the beneficiary under the Terra Bella DOT as a result of the result of U.S. Bank's parent entity (U.S. Bancorp) having purchased MUFG in December 2022. See https://www.usbank.com/about-us-bank/company-blog/article-library/us-bancorp-completes-acquisition-of-union-bank.html. Dkt. 1 at ¶ 39, n. 2.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

On September 28, 2024, the Court entered the Receivership Order, finding "[g]ood cause exists for the appointment of a receiver in order to maximize the recovery to creditors through the orderly sale of the assets of defendant Touchstone, and collection of obligations owed to Touchstone."  Receivership Ord. at ¶ C.  The Receivership Order appointed David P. Stapleton "as a general receiver in this action," effective as of October 1, 2024, the date he furnished the required bond to the Court.  *Id.* at ¶¶ 1, 40; Dkt. 36.   The Receivership Order awards the Receiver "exclusive possession and control" over the Receivership Property.  Receivership Ord. at ¶ 2.  The Receivership Property expressly includes the Real Property, which (to the Receiver's knowledge) is the only real property owned by Touchstone.  Dkt. 122. The Real Property is comprised of two contiguous parcels of real property, and the legal description is as follows:

> **APNs 319-130-25 and 319-130-26:**
>
> The South Half of the Southeast Quarter of Section 2, Township 23 South, Range 26 East, Mount Diablo Base and Meridian in the County of Tulare, State of California, according to the Official Plat thereof.
>
> EXCEPTING, all oil, gas, minerals and other hydrocarbon substances herein and hereunder, as reserved by Sue-Mar Vineyards Co., Inc., a corporation, in Deed recorded March 4, 1953, in Book 1656, at Page 532, of Official Records, as Document No. 6931.
>
> The above description is pursuant to the Certificate of Merger No. SVM 21-002, recorded on January 13, 2022 as Instrument No.2022-0002880 of Official Records in said County.

*Id.*[7]

The Receiver, in consultation with his advisors, has divided the Assets into two general Lots. Stapleton Decl. at ¶ 3.  Lot 1 includes (i) the Real Property, (ii) all personal property, other than Excluded Assets, located at the Real Property, owned by Touchstone, and used by Touchstone in the course of its operations (i.e., the Terra Bella Personal Property), and (iii) certain additional equipment (i.e., the Lot 1 Additional Equipment) that the Receiver believes will help maximize the value of the Real Property for prospective bidders (including the Stalking Horse Bidder).  *Id.*  The Terra Bella Personal Property includes various trailers, forklifts, hoppers and other machinery associated with moving and storing inventory at

---

[7]On February 3, 2025, the Court entered an order confirming Assessor Parcel Numbers 319-130-25 and 319-130-26 constitute Receivership Property under the Receivership Order, subject to the Receiver's authority to sell the same.  Dkt. 122.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

the site, along with other items of personal property used in operating the processing Facility, and the Lot 1 Additional Equipment includes, among other things, equipment components relating to hulling and packaging, as well as silos, bucket elevators, and other electrical and processing infrastructure.[8]  *Id.*  Lot 2 is comprised entirely of equipment purchased by Touchstone prior to this action and not yet used at the Facility or elsewhere.  *Id.* at ¶ 4.  Lot 2 includes, among other things, equipment components relating to hulling, palletization, and warming lines, shelling equipment, as well as sorters and other processing infrastructure.  *Id.*

Many pieces of the Lot 1 Additional Equipment and of Lot 2 are in high demand and have long lead times if purchased directly from manufacturers.  *Id.*  In addition, several parties who have express interested in purchasing the Real Property have conditioned that purchase on being able to purchase the Lot 1 Additional Equipment or Lot 2 alongside the Real Property for the purpose of updating various processing lines at the Facility.[9]  *Id.*

**B.      Sale Authority Under the Receivership Order**

The Receiver's primary responsibility under the Receivership Order is to liquidate the Receivership Property, including the Assets.  Receivership Ord. at ¶¶ C, 3; Dkt.122 at ¶ 2.  The Receivership Order requires the Receiver to comply with certain terms and procedures, depending on the type of property and sale process at issue.  Receivership Ord. at ¶¶ C, 3.  With respect to sales of real property, all such sales "shall be in accordance with 28 U.S.C. § 2001."  *Id.*  Additionally, all sales of real property and equipment "shall be 'as is' and 'with all faults,' free and clear of liens, claims and encumbrances, without representations or warranties and without recourse."  *Id.*  However, provided that the Receiver complies with those limited, specified terms and procedures, the Receiver has broad discretion to select the appropriate method and procedures for selling Receivership Property.  *See, e.g.,*

---

[8] For the avoidance of doubt, the Terra Bella Personal Property includes all personal property owned by Touchstone (and, therefore, constituting Receivership Property) that (i) is located at and has historically been used in the operations at the Real Property, (ii) is not an Excluded Asset and (iii) does not otherwise constitute a fixture to or other part of the Real Property.

[9] Full lists of the items comprising the Lot 1 Additional Equipment and Lot 2 are attached to the Stalking Horse PSA as Schedules 2.1.1(a)(vi) and 2.1.1(b), respectively.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

*id.* at ¶ 3 ("The Receiver is authorized to sell or otherwise liquidate or dispose of any or all of the Receivership Property by public or private sale or such other method as deemed appropriate by the Receiver exercising business judgment."); *id.* at ¶ 3(a) ("The Receiver is excused from effectuating the sale of any receivership Property in accordance with California Code of Civil Procedure § 568.5 and/or the provisions of the Enforcement of Judgments Act, and the Receiver may employ such sale procedures that the Receiver decides to employ in the exercise of the Receiver's discretion.").

To assist the Receiver in discharging his duty to liquidate the Receivership Property in a value-maximizing manner, the Receiver is authorized to employ a marketing agent to list and market any or all of the Receivership Property, subject to U.S. Bank and Court approval of any real estate broker fees to be paid in connection with the sale of and of any contingency commission arrangement and sale procedures to be employed in connection therewith. *Id.* at ¶ 3(a).

### C.    Marketing of the Assets

Prior the commencement of the Receivership, Cascadia Capital, LLC ("Cascadia") was engaged to market the Real Property along with other property and operations owned by Touchstone and its affiliates (collectively, the "Group Assets"). Porter Decl. at ¶ 4. The process carried out by Cascadia spanned over nine months, from approximately January 2, 2024, through September 17, 2024. *Id.* During that process, Cascadia formulated a broad list of parties who may be interested in acquiring some or all of the Group Assets, focusing on those parties with a known interest in pistachio & almond farming, pistachio processing and sales. *Id.* Cascadia publicized that opportunity to approximately 136 potentially interested parties through direct communication. *Id.* Of those parties with whom Cascadia made contact, approximately 43 parties entered into non-disclosure agreements and otherwise participated in due diligence. *Id.* Ultimately, four (4) parties submitted letters of intent or other indications of interest for a transaction that would involve acquisition of the Real Property, including some parties who also submitted bids for the Lot 1 Additional Equipment and/or for Lot 2 Assets. *Id.* As a result, Cascadia had already compiled an initial list of potentially interested parties for the Assets prior to the Receivership, including those who had affirmatively expressed interest in pursuing acquisition of the Assets (or portions thereof),

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

1  and many of the potentially interested parties were exposed to the Assets and conducted due diligence

2  during Cascadia's pre-Receivership marketing process. *Id.*

3      After considering his options, including Cascadia's qualifications and institutional knowledge

4  regarding the Assets, the Receiver negotiated an agreement to engage Cascadia (subject to Court approval)

5  to market and facilitate the sale of the Assets, leverage Cascadia's preexisting knowledge of the Assets

6  and build upon the pre-Receivership marketing process.[10]  Stapleton Decl. at ¶ 2; Porter Decl. at ¶ 5.  In

7  the interest of time, Cascadia began its work for the Receiver in early January 2025, including preparing

8  a data site for due diligence and contacting interested parties from the pre-Receivership process, along

9  with additional potential purchasers, to inform them of the opportunity to purchase the Assets.  Porter

10  Decl. at ¶ 5.  Among other things, the Receiver and Cascadia prepared a list of potential buyers, consisting

11  of all parties that Cascadia solicited in connection with the pre-Receivership process, all other parties in

12  the market that expressed interest in the pre-Receivership process, and all other parties identified by the

13  Receiver as potentially interested parties, among others. *Id.* at ¶ 6.  With the Receiver's approval, Cascadia

14  will communicate to all such parties directly in writing (and by phone as appropriate) with a synopsis of

15  the acquisition opportunity and an invitation to discuss the opportunity and bidding process further.  *Id.*

16      Cascadia also intends to provide interested parties with a Confidentiality Agreement and other

17  background information and, once available, the Court-approved Bidding Procedures. *Id.*[11]  In addition

18  to engaging with those parties, the Receiver will also publish weekly notices of the sale of the Assets, as

19  set forth in the Bidding Procedures.  Under the Bidding Procedures set forth below, interested parties will

20

21

22

23  [10] The proposed terms of Cascadia's retention and compensation are set forth in the Ex Parte Application
24  filed contemporaneously herewith.  The Receiver previously filed a notice of his intent to engage Cascadia
    pursuant to the procedure in Paragraph 39 of the Receivership Order, and no party in interest filed any
25  objection to that notice.  Dkt. 98.  Soon after, the Receiver and Cascadia renegotiated certain terms of the
    engagement to account for the likely inclusion of the Personal Property in any potential bid (including the
26  Stalking Horse PSA).  Thus, the Receiver did not submit an order for entry, and instead has sought
    approval in the Ex Parte Application to engage Cascadia on the appropriately modified terms.

27  [11] Cascadia further intends to communicate the proposed Bidding Procedures to interested parties prior
    to their approval.  Porter Decl. at ¶ 6.

28

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

have until April 1, 2025 (roughly 33 days from the filing of this Motion) to complete due diligence on the Assets and submit a bid.[12]

### D. Proposed Bidding Procedures

In consultation with Cascadia, his other professional advisors, and U.S. Bank, the Receiver evaluated various potential marketing strategies and sale processes, including a potential joint marketing and sale process with the Prudential Receiver.[13] Stapleton Decl. at ¶ 5.   Ultimately, the Receiver determined that entering into the Stalking Horse PSA and conducting a public sale process and auction of the Assets under 28 U.S.C. § 2001(a) in accordance with the following Bidding Procedures would result in reaching the highest number of potentially interested parties and provide the best path to achieving a value-maximizing transaction while minimizing the expense of that process for the Receivership estate:

- **Due Diligence**: To access the data room established by the Receiver and receive the form of Stalking Horse PSA for the Assets and/or a form of purchase and sale agreement for Assets in Lot 2 only (the "Equipment PSA"; together with the Stalking Horse PSA, the "PSAs"), and to otherwise participate in due diligence regarding the Assets,[14] a potential bidder must (i) enter into a confidentiality agreement in form and substance satisfactory to the Receiver (a "Confidentiality Agreement") and (ii) provide the Receiver with information concerning the identity of the potential bidder and financial qualifications that the Receiver may reasonably request and which the Receiver finds sufficient and satisfactory. Each person or entity that enters into a Confidentiality Agreement and satisfies the foregoing requirements is hereinafter referred to as a "Potential Bidder." The Receiver will accommodate Potential Bidders' reasonable requests for additional information and property access for purposes of inspection and reasonable due diligence. All diligence requests by Potential Bidders shall be directed to Scott Porter at sporter@cascadiacapital.com.

- **Bid Deadline**: **April 1, 2025 at 5:00 p.m. PT** (the "Bid Deadline").

- **Bid Requirements**: A bid from a Potential Bidder (each, a "Bid") must be submitted in the form of a purchase and sale agreement, reflecting the terms and conditions of the Bid (each, a "Proposed PSA"), along with a redline against the form Stalking Horse PSA or Equipment PSA, as applicable, provided by the Receiver. The Proposed PSA shall (a) be duly authorized

---

[12] Of course, many of the potentially interested parties were exposed to these Assets and conducted due diligence during the pre-Receivership marketing process conducted by Cascadia. *See* Porter Decl. at ¶ 4. While the Receiver believes, in consultation with Cascadia, that Cascadia's pre-Receivership marketing efforts likely reached most (if not all) potentially interested parties, the additional marketing and due diligence time period proposed by the Receiver will buttress those efforts to ensure all potential bidders are given adequate opportunity to participate in the sale process for the Assets. Stapleton Decl. at ¶ 8.

[13] The term "Prudential Receiver" means Lance Miller, in his capacity as receiver in that certain case entitled *The Prudential Insurance Company of America, et al., v. ACDF, et al.*, No. 1:24-cv-01102-KES-SAB (E.D. Cal.), or any successor thereto.

[14] For the avoidance of doubt, the Assets shall not include any "Excluded Assets," as that term is defined in the Stalking Horse PSA.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

and executed; (b) be based on the form Stalking Horse PSA or Equipment PSA, as applicable, provided by the Receiver; (c) to the extent the Bid is for all Assets, specify the allocation of proposed purchase price between Lot 1 and Lot 2; and (d) include all exhibits and schedules contemplated by the Proposed PSA. The Proposed PSA must contain or be accompanied by the following (the "Bid Requirements"):

- o  Purchase Price: The amount of the proposed cash purchase price must equal or exceed (i) $30,905,000 for all Assets, (ii) $25,577,500 for all of Lot 1 only, or (iii) $5,327,500 for all of Lot 2 only (i.e., the purchase price set forth in the Stalking Horse PSA, *plus* the Break-Up Fee(s) (as defined in the Stalking Horse PSA), *plus* an overbid of at least $100,000 for all Assets, $75,000 for Lot 1 only, and $25,000 for Lot 2 only).

- o  No Other Material Alterations to Form PSA: The Proposed PSA must include all material terms in the form PSA provided by the Receiver, including the following:

  - ▪  No Representations and Warranties by the Receiver: The Proposed PSA shall provide that (i) the sale will be "as is" and "with all faults," without representations or warranties, and without recourse, and (ii) the Potential Bidder has relied solely on its independent diligence, and not on any representations of the Receiver or his agents, in formulating and submitting its Bid.

  - ▪  No Diligence or Financing Conditions: The Proposed PSA shall provide that the Potential Bidder has had sufficient opportunity to conduct all necessary due diligence regarding the applicable Assets prior to submitting its Bid, and no further due diligence is necessary or required. The Proposed PSA shall provide for payment of the purchase price in cash, and that the Potential Bidder's obligations under the Proposed PSA, including payment of the purchase price thereunder, are not subject to any financing or similar contingency.

  - ▪  Free and Clear: The Proposed PSA shall provide that the sale will be free and clear of liens, claims and encumbrances, other than easements, rights of way and other encumbrances running with the land, to the fullest extent permitted by applicable law.[15]

- o  Good Faith Deposit: A Potential Bidder making a Bid must make a deposit in the amount of ten percent (10%) of the proposed purchase price in its Bid (a "Good Faith Deposit") into a Receiver trust account to be identified and established by the Receiver, which Good Faith Deposit the Potential Bidder will forfeit if its Bid is selected as the Successful Bid or, if applicable, the Back-Up Bid (each defined below) and the Potential Bidder does not close by the Outside Date or Back-Up Closing Date, as applicable (for a reason other than non-approval by the Court, default by the seller, or mutual termination of the sale).

- o  Proof of Funds / Authority: The Potential Bidder must provide sufficient information, as reasonably requested by the Receiver, for the Receiver to verify the Potential Bidder's ability to consummate the transaction contemplated by the Proposed PSA. Among other things, the Potential Bidder must provide (i) information demonstrating

---

[15] Each Proposed Sale Approval Order will provide for all liens on the applicable Assets to attach to the proceeds of the sale to the same extent, priority and validity as exist at the time of sale. Potential Bidders are advised that the Assets are part of the collateral securing Touchstone's loan obligations to U.S. Bank, and sale of the Assets free and clear of U.S. Bank's liens and encumbrances is subject to U.S. Bank's consent.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

(in the Receiver's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate a purchase of the applicable Assets at the purchase price proposed in the Bid and (ii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission, execution, and delivery of its Bid, participation in the Auction (defined below), and closing of the transaction contemplated by the Proposed PSA.

o  <u>Other Information</u>:  The Potential Bidder must commit to closing the transaction contemplated by the Proposed PSA in the event it is selected as the Back-Up Bid at the conclusion of the Auction.  The Potential Bidder must also provide a mailing address, email address and direct phone number for the person(s) authorized to discuss the Bid with the Receiver or his agents.

o  <u>Outside Date</u>: The Potential Bidder must commit to closing the contemplated transaction by no later than the later of fourteen (14) calendar days after entry of the order approving the sale and (ii) April 8, 2025 (the "<u>Outside Date</u>").

o  <u>Acknowledgement by Potential Bidder</u>: By submitting a Bid, each Potential Bidder shall be deemed to acknowledge that: (i) it understands and is bound by the terms of these Bidding Procedures; (ii) the Potential Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by the Receiver, Touchstone, U.S. Bank, or their respective agents and representatives, regarding any Assets subject to its Bid, these Bidding Procedures or any information provided in connection therewith; (iii) all due diligence regarding the assets which are the subject of its Bid must be completed prior to the Bid Deadline; and (iv) it submits its Bid of its own volition and with full knowledge of the potential consequences associated therewith.  Each Potential Bidder shall bear its own costs and expenses in connection with the submission of its Bid, the Auction, the sale process and preparation of those documents necessary to effectuate the transaction contemplated by its Bid, whether or not such Potential Bidder becomes a Qualified Bidder (defined below) and whether or not the transaction contemplated by its Bid is ultimately approved by the Court and/or consummated.

• **Publication Notice**: In addition to the Receiver's marketing and other outreach efforts, the Receiver will publish the following notice at least once per week during the weeks beginning March 2, March 9, March 16, and March 23, 2025 in at least one of either The Fresno Bee or The Visalia Times-Delta (the "<u>Publication Notice</u>"):

NOTICE OF SALE OF REAL AND PERSONAL PROPERTY

PLEASE TAKE NOTICE that in that certain action entitled U.S. Bank National Association v. Touchstone Pistachio Company, LLC, et al. (the "Action"), pending in U.S. District Court for the Eastern District of California (the "Court"), Case No. 1:24-cv-01105-KES-SAB, the Court-appointed receiver, David P. Stapleton (the "Receiver") intends to conduct an auction to sell (i) the real property owned by Touchstone Pistachio Company, LLC ("Touchstone"), located at 19570 Ave. 88, Terra Bella, CA 93270 in Tulare County, California (APNs: 319-130-025 and 319-130-026), together with the pistachio processing facility and other buildings, structures, improvements, and fixtures located thereon, and the rights, privileges, easements, rights and rights-of-way appurtenant thereto, (ii) the personal property owned by Touchstone

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

used in connection with operations thereon, and (iii) certain additional machinery and equipment owned by Touchstone (collectively, the "Property"). The Property will be sold pursuant to 28 U.S.C. § 2001(a), free and clear of monetary liens, claims and encumbrances, in "as is, where is" condition, and with no representations or warranties by the Receiver. Sale of the Property is subject to Court confirmation after the auction has completed.

On March 5, 2025, the Court entered an order approving bidding and sale procedures for the Property (the "Bidding Procedures"), including specific requirements that interested parties must meet to submit a qualified bid and participate in the auction. A complete copy of the Bidding Procedures can be obtained from the Receiver's marketing agent, Scott Porter of Cascadia Capital, LLC at sporter@cascadiacapital.com. Interested parties are urged to contact Mr. Porter and request a copy of the Bidding Procedures as soon as practicable.

To participate in the auction, interested parties must comply with the Bidding Procedures and submit a qualifying bid, good faith deposit and other documentation and information, in conformance with the Bidding Procedures, so that they are received by the Receiver no later than 5:00 p.m. PT on April 1, 2025 (the "Bid Deadline").

In the event the Receiver receives more than one acceptable, qualifying bid on Property prior to the Bid Deadline, the Receiver may select a bid to serve as the opening bid at an auction, at which qualified bidders will have the opportunity to submit overbids based on the purchase price and terms of the opening bid.

In the event the Receiver proceeds with the auction, such auction will take place April 3, 2025, beginning at 9:00 a.m. PT, at Regus, 265 East River Park Circle (1st Floor), Fresno, CA 93720. At the conclusion of the auction, the Receiver will select the winning bidder and the back-up bidder.

The Court has scheduled a hearing to confirm the sale to the winning bidder on April 7, 2025, at 1:30 p.m., at the Robert E. Coyle United States Courthouse, Courtroom 6, 7th Floor, 2500 Tulare Street, Fresno, California, 93721.

Any questions about the Property, the Bidding Procedures, the auction or the sale process should be directed to Mr. Porter using the contact information above.

- **Selection of Opening Bids and Qualification of Bidders**: After the Bid Deadline, the Receiver may, in his sole discretion, after consultation with U.S. Bank and U.S. Bank's counsel and/or other professional advisors (collectively, the "Consultation Parties"), select the highest or otherwise best Bid(s) for the Assets (each, an "Opening Bid" and, collectively, the "Opening Bids"). A Bid will be valued by the Receiver based upon any and all factors that the Receiver deems pertinent in his reasonable business judgment, including, among others, (i) the proposed purchase price attributable to the applicable Assets in the Bid, (ii) the risks and timing associated with consummating the transaction with the Potential Bidder, and (iii) any other factors that the Receiver may reasonably deem relevant. The Receiver may select an Opening

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

Bid that includes all of the Assets, or may select separate Opening Bids for Lot 1 and Lot 2.[16] Following the Bid Deadline, the Receiver is authorized to communicate and negotiate with Potential Bidders and U.S. Bank to (a) clarify, modify, or improve the terms of their Bids in connection with selecting the Opening Bid(s), (b) cure any defects that would prevent such Potential Bidder from becoming a Qualified Bidder (defined below), and/or (c) otherwise promote a more competitive bidding and auction process with the ultimate goal of maximizing the value of the Assets.

Only those Bids and Potential Bidders that (i) comply with the Bid Requirements by the Bid Deadline and (ii) confirm in writing that (a) the Potential Bidder has not engaged in any collusion with respect to the bidding process, (b) its Bid is a good faith bona fide offer that it intends to consummate if its Bid is selected as the Successful Bid or Back-Up Bid (each defined below), and (c) it consents to the Receiver sharing its Bid with all other Qualified Bidders will constitute, respectively, "<u>Qualified Bids</u>" and "<u>Qualified Bidders</u>" and be permitted to participate in the Auction (defined below).[17]

If the Stalking Horse PSA is the only Qualified Bid, the Receiver may cancel the Auction, and the Stalking Horse PSA shall then be the Successful Bid, and the Stalking Horse Bidder shall be the Successful Bidder (each as defined below).

- **<u>Auction Instructions or Cancellation</u>**: By **April 2, 2025,** the Receiver will:

  - (i) if at least one Qualified Bid, in addition to the Stalking Horse PSA, is received, provide Auction instructions and procedures, which will include a copy of any Opening Bid(s) (the "<u>Auction Instructions</u>") to all Qualified Bidders; or

  - (ii) if the Stalking Horse PSA is the only Qualified Bid received, file a notice with the Court and notify the Potential Bidders that the Auction is cancelled, and the Stalking Horse PSA has been deemed the Successful Bid (defined below).

- **<u>Auction</u>**: If multiple Qualified Bids are received, the Receiver will conduct an auction on **April 3, 2025 at 9:00 a.m. PT** at Regus, 265 East River Park Circle (1st Floor), Fresno, CA 93720 (the "<u>Auction</u>"). Only Qualified Bidders and representatives of the Receiver and U.S. Bank are permitted to attend the Auction. Each Qualified Bidder must appear in person or through a duly-authorized representative in person, who must be identified to the Receiver at least twenty-four (24) hours prior to the start of the Auction.

At the commencement of the Auction, the starting bid(s) shall be the Opening Bid(s). Overbidding at the Auction will proceeds in increments of at least (i) $100,000 for Qualified Bids that include all Assets, (ii) $75,000 for Qualified Bids that include all of Lot 1 only, and (iii) $25,000 for Qualified Bids that include all of Lot 2 only.[18] All bids at the Auction are

---

[16] For the avoidance of doubt, the Receiver is authorized to consider Bids for less than all of the Assets comprising Lot 2, and can exercise his reasonable business judgment, in his sole discretion, to determine whether such Bid constitutes a Qualified Bid, and whether Lot 2 should be subdivided at the Auction for separate overbidding to maximize the value of Assets comprising Lot 2.

[17] For the avoidance of doubt, the Stalking Horse PSA submitted by the Stalking Horse Bidder shall constitute a Qualified Bid. Potential Bidders can only become Qualified Bidders on the Assets which are the subject of their Bid, any may not participate in the Auction, if any, of Assets which were not included in their Bid.

[18] To the extent the Receiver determines, in his discretion, to subdivide Lot 2 for overbidding at the Auction, the Receiver shall identify that subdivision to all Qualified Bidders for Lot 2. The Receiver will (continued...)

binding on the party submitting the bid and may not be withdrawn or modified once announced, must be <u>all cash</u> bids, and cannot be subject to any contingencies, including financing or due diligence contingencies, unless specifically provided for in these Bidding Procedures or the Opening Bid.

If the Receiver deems necessary or appropriate, the Receiver may continue or adjourn the Auction from time to time with the announcement of the first adjournment to be made to all Qualified Bidders no later than the original Auction date.

At the conclusion of the Auction, the Receiver, in consultation with the Consultation Parties, will select the highest or otherwise best offer for the Assets (or a subset thereof) as the "<u>Successful Bid</u>," and such bidder shall be the "<u>Successful Bidder</u>" with respect to the applicable Assets. The Receiver, in consultation with the Consultation Parties, will select the next highest or otherwise best offer for such Assets after the Successful Bid as the "<u>Back-Up Bid</u>," and such bidder shall be the "<u>Back-Up Bidder</u>." The Successful Bidder(s) and Back-Up Bidder(s) for the Assets, as applicable, shall, within two (2) business days after completion of the Auction, increase their respective Good Faith Deposits such that the respective amount on deposit by such bidder is equivalent to ten percent (10%) of the Successful Bid(s) and Back-Up Bid(s), respectively.

- **<u>Modification of Certain Bidding Procedures</u>**: Notwithstanding any of the foregoing, the Receiver shall have the right to extend the Bid Deadline, modify the Bid Requirements, modify the overbid increments, modify the Assets included in Lot 2, and/or modify the timing of providing the Auction Instructions to the Qualified Bidders at or prior to the Auction (as defined below), including, without limitation, by waiving certain Bid Requirements or imposing additional terms and conditions with respect to any or all Potential Bidders, without further order of the Court, subject to consultation with the Consultation Parties, if the Receiver determines in his business judgment that such modification is in the best interest of the Receivership estate.

- **<u>Notice of Successful Bid(s) and Proposed Sale Approval Order(s)</u>:** By **April 4, 2025**, the Receiver will file (i) a notice with the Court (the "<u>Notice of Successful Bid(s)</u>") identifying (a) the Successful Bid(s) for the Assets, as applicable, and (b) if applicable, the Back-Up Bid(s) for such Assets, and (ii) any supplemental briefing and evidence in support of approval of such Successful Bid(s) and, if applicable, such Back-Up Bid(s). The Notice of Successful Bid(s) will include a form of Proposed Sale Approval Order for each Successful Bid, with a copy of the signed purchase agreement constituting such Successful Bid (and a copy of the respective Back-Up Bid purchase agreement, if applicable) attached thereto.

  o If a Potential Bidder's Bid is not selected as a Qualified Bid, a Successful Bid or a Back-Up Bid for the Asset(s) which are the subject of its Bid, the Receiver will return such Potential Bidder's Good Faith Deposit as soon as practicable, but no later than seven (7) business days following the filing of the Notice of Successful Bid(s). The Receiver shall retain the Good Faith Deposit(s) submitted in connection with each Successful Bid and, if applicable, each Back-Up Bid until the closing of the sale of the respective Asset(s) which are the subject of such Bids. At the closing of the sale of such Asset(s) pursuant to a Successful Bid (or the Back-Up Bid, if applicable), the purchaser will be entitled to a credit against the purchase price in the amount of its Good Faith Deposit with respect to such Asset(s). If a Potential Bidder that submitted a Successful Bid (and/or a Back-Up Bid, if applicable) fails to close by the Outside

set the amount of any minimum overbids and bidding increments on the subdivided lots in his discretion before or during the Auction.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

Date or Back-Up Closing Date, as applicable (for a reason other than non-approval by the Court, default of the seller under the applicable Proposed PSA, or mutual termination of the applicable Proposed PSA), the corresponding Good Faith Deposit(s) will become Receivership Property. If a Successful Bid closes prior to the Outside Date, the Receiver will return the Good Faith Deposit for the Back-Up Bid as soon as practicable thereafter, but no later than seven (7) business days after the closing date of the sale to the Successful Bidder.

- **Sale Hearing:** On **April 7, 2025 at 1:30 p.m. PT**, the Court will conduct a hearing to approve each Successful Bid (and each Back-Up Bid, if applicable) for the Assets (the "Sale Hearing"); provided that if the Stalking Horse PSA is the only Qualified Bid for the Assets, and such Stalking Horse PSA has been accepted as the Successful Bid (and the Auction has therefore been cancelled), the Receiver may seek an earlier Sale Hearing date. Any objections to the approval of a Successful Bid and/or Back-Up Bid or the form of a Proposed Sale Approval Order, and any response thereto by the Receiver, may be raised and presented at or before the Sale Hearing.

- **Closing; Notice of Closing**: If a Successful Bid fails to close by the Outside Date, the Receiver may proceed to consummate the Back-Up Bid for such Asset(s) (if any) without need for a further hearing or further order of the Court, by providing written notice to the Back-Up Bidder for such Asset(s). The Back-Up Bidder will be required to close no later than seven (7) business days of receipt of written notice from the Receiver that the Successful Bid has failed to close (the "Back-Up Closing Date"); provided that the Receiver may, in his discretion, extend the Back-Up Closing Date. Promptly after the closing of the sale pursuant to a Successful Bid (or a Back-Up Bid, if applicable), the Receiver will file a notice of such closing with the Court.

Stapleton Decl. at ¶ 5.

### E.    The Stalking Horse PSA and Break-Up Fees

Following lengthy arm's-length and good faith negotiations, the Receiver and the Stalking Horse Bidder have agreed on the terms of the Stalking Horse PSA, attached to the Proposed Bid Procedures Order as Exhibit B. *Id.* at ¶ 6. Pursuant to the Stalking Horse PSA, the Stalking Horse Bidder, subject the overbid process set forth above and modification of the Stalking Horse PSA in connection therewith, has committed to purchasing the Assets for a total purchase price of $30,500,000. *Id.* The Receiver submits the Stalking Horse PSA promotes competitive bidding and maximization of the value of the Assets by establishing the baseline Bid Requirements in connection with the Bidding Procedures. *Id.*

Specifically, the Stalking Horse PSA contemplates that Potential Bidders will have the opportunity (as set forth in the Bidding Procedures above) to submit bids on all Assets, just Lot 1, or just Lot 2 (or some portion thereof). With respect to the minimum purchase price component of the Bid Requirements, the minimum bids for all Assets, Lot 1, and Lot 2 are derived from the purchase price (and allocations thereof to Lot 1 and Lot 2) under the Stalking Horse PSA and the Break-Up Fee(s) (as defined in the

14

Stalking Horse PSA), plus the applicable overbid amount.  In the Stalking Horse PSA, the total cash purchase price for the Assets is $30,500,000.00 (the "Stalking Horse Purchase Price"), which is allocated as follows: (i) $25,250,000.00 for Lot 1, and (ii) $5,250,000.00 for Lot 2.  To compensate the Stalking Horse Bidder for its diligence, its negotiation of the Stalking Horse PSA, and agreeing to serve in this role and set the floor for the Bid Requirements and Auction, the Receiver proposes to pay the Stalking Horse Bidder a one percent (1%) break-up fee under specified circumstances. With respect to each Lot, if (i) the Stalking Horse Bidder (a) is not selected (or is not approved by the Court) as the Successful Bidder or Back-Up Bidder for such Lot or (b) is selected as the Back-Up Bidder for such Lot, *and* (ii) Seller consummates a sale of such Lot to another Qualified Bidder (each, an "Alternative Transaction"), then the Stalking Horse Bidder shall be entitled to payment of a breakup fee in the amount of 1% of the Stalking Horse Purchase Price amount allocated to such Lot from the proceeds of such Alternative Transaction (each, a "Break-Up Fee").[19]

## III.    Argument

A district court's power to supervise a receivership and determine "the appropriate action to be taken in the administration of the receivership is extremely broad" and "[r]easonable administrative procedures, crafted to deal with the complex circumstances of each case, will be upheld." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986).  In particular, as set forth in more detail below, district courts have broad discretionary authority to approve terms and procedures for the sale of receivership property. *Gockstetter v. Williams*, 9 F.2d 354, 357 (9th Cir. 1925) ("In authorizing the sale of property by receivers, courts of equity are vested with a broad discretion as to price and terms.").  The Ninth Circuit "affords broad deference to the court's supervisory role, and will generally uphold reasonable procedures instituted by the district court that serve th[e] purpose of orderly and efficient administration of the receivership for the benefit of creditors." *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999), *as amended* (Mar. 23, 2000) (internal quotations and citations omitted).

---

[19] The other material terms of the Stalking Horse PSA are outlined in the Bid Requirements above.

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

A.    **The Proposed Bidding Procedures and Break-Up Fees Comply with the Receivership Order and Applicable Law and Should Be Approved**

1.    **The Notices and Auction Proposed in the Bidding Procedures Satisfy the Requirements for a Public Sale Under 28 U.S.C. §§ 2001(a) and 2002**

As set forth in the Receivership Order, the sale of the Real Property is governed by 28 U.S.C. § 2001 ("Section 2001").[20]   Receivership Ord at ¶ 3. With respect to judicial sales, Section 2001 sets forth two possible courses of action a Receiver may take: "(1) property may be sold in public sale; or (2) property may be sold in a private sale, provided that three separate appraisals have been conducted, the terms are published in a circulated newspaper ten days prior to sale, and the sale price is no less than two-thirds of the valued [*i.e.*, appraised] price."  *S.E.C. v. Goldfarb*, 2013 U.S. Dist. LEXIS 118942, at *5 (N.D. Cal. 2013). [21]   The requirements for a "public sale," which are set forth subsection (a) of Section 2001, are as follows:

> **Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale** at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. **Such sale shall be upon such terms and conditions as the court directs.**

> **Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed**, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

28 U.S.C. § 2001(a) (emphasis added).

Public sales of real property also must comply with the publication notice requirements of 28 U.S.C. § 2002 ("Section 2002").  Specifically, "a public sale of realty or interest therein under any order,

---

[20]  Pursuant to 11 U.S.C. § 2004 ("Section 2004"), judicial sales of personal property also shall be in accordance with Section 2001 "unless the court orders otherwise." 28 U.S.C.A. § 2004. The Receivership Order permits the Receiver to sell Personal Property (as defined in therein), which includes the Terra Bella Personal Property, the Lot 1 Additional Equipment, and Lot 2, without adhering to the requirements of Section 2004 and Section 2001; however, the proposed Bidding Procedures, which the Receiver submits satisfy Section 2001, shall apply to all the Assets.

[21]  Because the Receiver seeks to sell the Assets pursuant to a "public sale" under subsection (a) of Section 2001, the Bidding Procedures need not provide for any appraisals or appraised value under subsection (b). *See Truist Bank v. AgTech Sci. Grp., LLC*, No. 521CV00190REWMAS, 2022 WL 1164920, at *3 (E.D. Ky. Mar. 25, 2022), *report and recommendation adopted*, No. 5:21-CV-190-REW-MAS, 2022 WL 1154601 (E.D. Ky. Apr. 19, 2022) ("[B]ecause the proposed [] sale was public rather than private, it falls under § 2001(a) only and need not meet the more stringent § 2001(b) requirements for private sales.").

---

16

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated." 28 U.S.C. § 2002. A notice of public sale is sufficient if it describes the property and the time, place, and terms of sale. *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*, 172 F.2d 416, 422 (10th Cir. 1949).

An auction need not permit unrestricted public participation to qualify as a "public sale" under Section 2001(a) – the "terms and conditions" directed by the court can limit auction participation to bidders that meet certain requirements. *See, e.g.*, *S.E.C. v. Champion-Cain*, No. 3:19-CV-1628-LAB-AHG, 2020 WL 2309270, at *3 (S.D. Cal. May 8, 2020) (approving auction with minimum bid, good faith deposit, and proof of fund requirements and pre-auction bid deadline as "public sale" under 28 U.S.C. § 2001(a)); *United States v. Leak*, No. 5-17-CV-00454-FL, 2021 WL 1098484, at *1–2 (E.D.N.C. Feb. 17, 2021) (approving mail-in bid, proxy bid, or via in-person auction with minimum bid, good faith deposit, and proof of funds requirements as "public sale" under 28 U.S.C. § 2001(a)).

Additionally, if the marketing and other publication of the sale (including the four weekly public notices published in accordance with Section 2002) do not attract any Qualified Bidders, other than the Stalking Horse Bidder, by the published Bid Deadline, the Receiver need not proceed with the scheduled Auction for the sale to the Stalking Horse Bidder to constitute a "public sale." *See, e.g.*, *Champion-Cain*, 2020 WL 2309270, at *4 (approving sale to sole qualified bid following cancellation of auction as a "public sale" under 28 U.S.C. § 2001(a)); *see also Breeding Motor*., 172 F.2d at 424 ("It is the well established rule that a judicial sale regularly made with notice and in the manner prescribed by law will not be denied confirmation or be set aside for mere inadequacy in price unless the price is so gross as to shock the conscience of the court, coupled with slight additional circumstances indicating unfairness such as chilled bidding.").

The Bidding Procedures, including the procedures regarding the proposed Auction, satisfy the "public sale" requirements set forth in Section 2001(a). All prospective buyers will have an opportunity to conduct due diligence and submit a Qualified Bid by the Bid Deadline, and the Bid Requirements for

Auction participation are consistent with those approved by other courts in the context of public judicial sales (e.g., proof of funds, a Good Faith Deposit, and proof of due authorization).  Additionally, Fresno, California (i.e., the proposed location of the Auction) is in the Eastern District of California (i.e., the district wherein the Receiver was first appointed), as required by Section 2001(a).

The proposed Publication Notice under the Bidding Procedures also satisfies the public notice requirements set forth in 28 U.S.C. § 2002.  Publication at least once per week during the weeks beginning March 2, March 9, March 16, and March 23, 2025 in at least one of either The Visalia Times-Delta (a newspaper "regularly issued and of general circulation" in Tulare County, California the county wherein the Real Property is located) or The Fresno Bee (a newspaper of general circulation in nearby Fresno, California) alone satisfies Section 2002.  To maximize exposure of the proposed sale to potentially interested parties, however, the Receiver plans to publish the Publication Notice in both The Visalia Times-Delta and The Fresno Bee at least once each during that marketing period.

Furthermore, the Publication Notice provides sufficient information for all prospective bidders to participate in the process – namely, the bid deadline, the minimum bid amount and other key bid requirements, the auction date, and contact information for the Receiver's agent—thereby serving the underlying purpose of this notice requirement.  *See Champion-Cain*, 2020 WL 2309270, at *4 (approving public sale of commercial real property with substantially identical published notice); *United States v. Spencer*, No. 420CV00556GKFCDL, 2021 WL 5114315, at *1 (N.D. Okla. Sept. 23, 2021) (requiring published notice of sale need only contain an "adequate description" of the real property, not its full legal description, and limited "material terms and conditions of sale" set forth in order); *United States v. Weldon*, No. 118CV01318JLTSKO, 2023 WL 5596003, at *4 (E.D. Cal. Aug. 28, 2023), *reconsideration denied*, No. 118CV01318JLTSKO, 2023 WL 6163972 (E.D. Cal. Sept. 21, 2023) (finding "state or local law notice requirements for foreclosures or execution sales do not apply" to sale by receiver under federal law and requiring published notice of sale to contain only a description of the property and limited "material terms" set forth in order); *United States v. Nelson*, No. 520CV02084JWHSHK, 2022 WL 3588422, at *3–4 (C.D. Cal. July 26, 2022) (same).

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

>    **2.    The Bidding Procedures and Break-Up Fees Each Represent a Sound Exercise of the Receiver's Business Judgment**

As noted above, under 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process "***upon such terms and conditions as the court directs***."  28 U.S.C. § 2001 (emphasis added).  In other words, beyond ensuring compliance with the mandatory notice and auction requirements set forth in the statute, the Court has broad discretion to approve the precise terms, conditions, and timeline of a federal receiver's proposed sale of receivership property.  *See United States v. Little*, No. CV-F-02-5141LJODLB, 2008 WL 2676808, at *2 (E.D. Cal. June 30, 2008) ("[T]his Court has broad discretion in setting the terms and conditions of a sale under 28 U.S.C. § 2001.");  *see also United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales. . . . It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof.");  *United States v. Heasley*, 283 F.2d 422, 426 (8th Cir. 1960) ("In general, the rule in federal courts is well settled that the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court and this discretion will not be disturbed on appeal except in cases of its abuse.");  *Revere Copper & Brass v. Adriance Mach. Works*, 68 F.2d 708, 709 (2d Cir. 1934) ("The terms and methods of judicial sale are largely in the discretion of the district judge directing the sale.");  *United States v. Vilhauer*, 57 F. App'x 711, 713 (8th Cir. 2003) ("[T]he methods of the judicial sale were in the district court's discretion.");  *S.E.C. v. EquityBuild, Inc.*, No. 18 CV 5587, 2019 WL 1953117, at *2 (N.D. Ill. May 2, 2019) ("Section 2001(a) permits the court to set the terms and conditions of judicial sales of real property and that the district court's discretion will not be disturbed on appeal except for abuse.") (internal quotations and citations omitted);  *U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP.*, No. CV 21-0502, 2024 WL 169574, at *4 (E.D. Pa. Jan. 16, 2024) ("The plain text of Section 2001(a) merely mandates compliance with any conditions of sale that the court requires.  Including any such conditions beyond those set out in Sections 2001 and 2002, however, is a matter of discretion.").

Federal courts are deferential to the business judgment of receivers, bankruptcy trustees, and similar estate custodians in the context of sales of estate property.  *See, e.g., S.E.C. v. Nguyen*, No.

19

SACV1901174AGKESX, 2019 WL 12470145, at *3 (C.D. Cal. Nov. 4, 2019) (citing receiver's declaration that, in receiver's business judgment, proposed marketing and sale procedures were in the best interest of the estate and would maximize value, in approving proposed procedures); *EquityBuild*, 2019 WL 1953117, at *4 (noting that the court "declines to restrict the Receiver from exercising his sound business judgment" in overruling creditor's objection to receiver's proposed minimum price for judicial public sale of real property); *see also Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) (affirming bankruptcy court's approval of trustee's sale of asset because "decision concerning the form of sale therefore rested within the business judgment of the trustee"). This deference to an appointed fiduciary's business judgment permits federal courts to authorize a receiver to adjust approved sale terms or procedures without further order of the court. *See, e.g.*, *Spencer*, 2021 WL 5114315, at *1 (permitting adjustment of minimum bid in public sale of real property under 28 U.S.C. 2001, if necessary, without further permission of the court). Such flexibility is typical in bidding and sale procedures approved by bankruptcy courts in connection with asset sales conducted to pursuant 11 U.S.C. § 363 ("363 sales"), and district courts recognize that 363 sales provide instructive guidance in evaluating judicial sales of receivership property. *See, e.g.*, *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 U.S. Dist. LEXIS 174856, at *14 (C.D. Cal. Oct. 13, 2015) (looking to the Bankruptcy Code for guidance in connection with sale of receivership property).

### a)    Bidding Procedures

The Receiver has determined, in a reasonable exercise of his business judgment and in consultation with his professional advisors, that the proposed Bidding Procedures will promote a competitive bidding process and generate the highest sale price for the Assets under the circumstances. Stapleton Decl. at ¶ 7. The Bidding Procedures provide prospective buyers with sufficient time and information to submit competitive bids that represent the highest or otherwise best value for the Assets, while minimizing any unnecessary cost or delay. *Id.* at ¶ 8. Additionally, the Bidding Procedures strike an appropriate balance between giving potential buyers sufficient notice of the terms and procedures of the sale and auction and retaining sufficient flexibility for the Receiver to efficiently adjust to any changes in circumstances. *Id.* Striking such a balance is consistent with the principle that "a primary purpose of equity receiverships is

1  to promote orderly and efficient administration of the estate by the district court for the benefit of

2  creditors." *Hardy*, 803 F.2d at 1038.

3      The Bidding Procedures also appropriately impose Bid Requirements to ensure that only qualified,

4  serious bidders who are capable of closing at or above a minimum opening price are allowed to participate

5  in the Auction.  Stapleton Decl. at ¶ 9.  These provisions of the Bidding Procedures – including the

6  minimum purchase price, Good Faith Deposit and proof of funds requirements – were formulated by the

7  Receiver in consultation with Cascadia and U.S. Bank (who maintains consent rights on any sale) and via

8  good faith, arm's-length negotiations with the Stalking Horse Bidder.  *Id.*  The Receiver believes these

9  Bid Requirements set an appropriate floor for bidding, will weed out parties who do not have the financial

10 wherewithal to close on otherwise qualifying Bids, and will promote efficient use of the Receiver and

11 Cascadia's resources during the diligence period, the Auction process and the period prior to and after the

12 Court's confirmation of the sale.  *Id.*

13     The Bidding Procedures also allow for Potential Bidders to place bids on (i) all of the Assets,

14 (ii) Lot 1 only, or (iii) Lot 2 only, and authorize the Receiver to consider bids for less than all of the Assets

15 comprising Lot 2.  The Receiver and Cascadia believe this optionality will result in maximizing the value

16 of the Real Property and Terra Bella Personal Property by bundling those Assets with the Lot 1 Additional

17 Equipment and by allowing Potential Bidders to "package" those Lot 1 assets with Lot 2, to the extent

18 they believe the Lot 2 equipment is necessary to maximize operational value going forward.[22]  Stapleton

19 Decl. at ¶ 10; Porter Decl. at ¶ 7.  In turn, those parties who are interested only in Lot 2 will be incentivized

20 to maximize their Bids to increase the likelihood of purchasing those assets separate and apart from Lot

21 1.  *Id.*  Ultimately, the Receiver will be incentivized to select the Bid, or combination of Bids, that result

22 in the highest and best price and terms for the pool of Assets, and lowest risk that the sale(s) will not close.

23 *Id.*

24     In terms of timing, the Bidding Procedures will provide additional time for due diligence by those

25 parties who did not complete diligence prior to the Receivership or to date, but are also intended to

26 ───────────────

27 [22] For those Potential Bidders who place a Bid on all Assets, the Bid must allocate the proposed purchase
price between Lot 1 and Lot 2.  This will allow the Receiver, Cascadia and U.S. Bank to compare "apples
to apples" on the various Bids that may include either one or both Lots.

28

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

facilitate an expedient process to capture the value of transitioning ownership of the Facility in time to utilize its capacity for the 2025 pistachio harvest. Stapleton Decl. at ¶ 11. The Receiver and Cascadia believe that purchasers will pay a premium for Lot 1 if they have sufficient time after closing to make any desired modifications to the Facility (including installing components of the Lot 1 Additional Equipment and, if applicable, Lot 2) and contract with growers to supply product from the 2025 harvest. Stapleton Decl. at ¶ 11; Porter Decl. at ¶ 8. A sensible but swift additional marketing process, followed by a short timeframe between the Bid Deadline and the Sale Hearing, will help ensure Potential Bidders are not deterred by a lengthy process to obtain possession of the Real Property and achieve their objectives with the Facility. *Id.*

Furthermore, the Bidding Procedures are consistent with those approved by other district courts in the context of judicial sales of receivership property. *See, e.g.*, *Branch Coal*, 390 F.2d at 10 (finding district court "acted within its authorized discretion when it declared that the successful bidder would forfeit his deposit if he should fail to complete the sale"); *S.E.C. v. Champion-Cain*, 2020 WL 2309270, at *3 (approving minimum bid, good faith deposit, and proof of fund requirements, pre-auction bid deadline, and auction cancellation procedures); *Leak*, 2021 WL 1098484, at *1–2 (approving minimum bid, good faith deposit, and proof of funds requirements as "public sale" under 28 U.S.C. § 2001(a)); *Spencer*, 2021 WL 5114315, at *1 (authorizing adjustment of minimum price for public sale of real property under 28 U.S.C. 2001(a) without further Court order).

Finally, by including the terms set forth in Paragraph 3 of the Receivership Order as Bid Requirements (e.g., requiring that the sale be "as is" and "with all faults," free and clear of liens, claims and encumbrances, without representations or warranties and without recourse), the Bidding Procedures ensure that any Successful Bid and Back-Up Bid will comport with the requirements already imposed by the Court.[23] Accordingly, the Receiver respectfully submits the Court should approve the Bidding Procedures.

---

[23]The Court has already authorized the Receiver to sell all Receivership Property free and clear of liens claims and encumbrances in the Receivership Order, which it was empowered to do under applicable law. Receivership Ord. at ¶ 3; *see SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 U.S. Dist. LEXIS 174856, at *13 (C.D. Cal. Oct. 13, 2015) ("[I]t has long been recognized that under (continued…)

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY

### b)     Break-Up Fees

The proposed Break-Up Fees set forth in the Stalking Horse PSA similarly represent an appropriate exercise of the Receiver's business judgment.   Based on the marketing process and arm's-length negotiations with the Stalking Horse Bidder, Cascadia and the Receiver determined that the inclusion of the Break-Up Fees was necessary and appropriate to obtain the Stalking Horse Bidder's commitment to serve as the stalking horse – a commitment the Receiver believes will yield net benefits to the Receivership estate.  Porter Decl. at ¶ 9; Stapleton Decl. at ¶ 12.  By definitively establishing acceptable baseline terms for the sale, the Stalking Horse PSA will encourage potential buyers to bid for the Assets and attract only qualified bidders who are willing to submit higher and better bids for the Assets, thereby maximizing the realizable value of such Assets for the benefit of the Receivership estate.  *Id.*

Additionally, setting a floor for the value of the Assets and locking in the Stalking Horse Bidder's commitment provides significant downside protection for the Receivership estate and its creditors.  *Id.* Furthermore, because a Bid must exceed the Stalking Horse Purchase Price by an amount *in excess of* the applicable Break-Up Fee(s) in order to constitute a Qualified Bid, in the event that the Receiver consummates an Alternative Transaction – a prerequisite for the Stalking Horse Bidder's entitlement to a Break-Up Fee – payment of such Break-Up Fee from the proceeds will not unduly diminish the Receivership estate.  *Id.*  Finally, due to the modest size of the Break-Up Fee (1%), this overbid requirement will not chill bidding.  *Id.*  For the foregoing reasons, the Receiver submits that the Break-Up Fees reflect a sound business purpose and request Court approval thereof.

### B.     The Court Has Ample Authority to Approve the Sale of the Assets Pursuant to the Proposed Bidding Procedures

As noted above, a district court's power to "supervise . . . and determine the appropriate action to be taken in the administration of [a] receivership is extremely broad." *Hardy*, 803 F.2d at 1037.  "As part of this broad discretion, the district court sitting in equity and having custody and control of property 'has power to order a sale of the same in its discretion.  The power of sale necessarily follows the power to

---

appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.") (internal quotations and citations omitted).

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY

take control of and to preserve property[.]'" *Champion-Cain*, 2020 WL 2309270, at *2 (quoting *SEC v. Am. Capital Invs.*, 98 F.3d 1133, 1144 (9th Cir. 1996)).

The Court can exercise its discretion to approve the sale of the Assets at the Sale Hearing in the manner outlined in the proposed Bidding Procedures.  Notably, the 33-day period between the date of the proposed Bidding Procedures hearing (March 5, 2025) and the date of the proposed Sale Hearing (April 7, 2025), when viewed in light of the robust, nine-month pre-Receivership marketing process and Cascadia's renewed marketing efforts during this Receivership, which commenced approximately two months before the proposed Bidding Procedures hearing date, is well within the range of sale timelines approved by federal courts in receivership cases and by bankruptcy courts in connection with 363 sales. *See, e.g.*, *Champion-Cain*, 2020 WL 2309270, at *2 (order approving receiver's public sale of commercial real property entered 55 days after publication notice for overbids); *In re Pacific Monarch Resorts, Inc.*, Case No. 8:11-bk-24720-SC [ECF No. 200] (Bankr. C.D. Cal. Jan. 13, 2023) (sale order approving sale of real and personal property entered 81 days after petition date); *In re Casa Systems, Inc.*, Case No. 24-10695 [ECF Dkt. Nos. 223, 419] (Bankr. D. Del. April 26, 2024) (sale orders entered 23 days and 62 days after petition date); *In re Taronis Fuels, Inc.*, et al., Case No. 22-11121 [ECF Dkt. No. 135] (Bankr. D. Del. Dec. 12, 2022) (sale order entered 31 days after petition date); *In re Celadon Group, Inc.*, Case No. 19-12606 (KBO) [ECF Dkt. Nos. 417, 418] (Bankr. D. Del. Jan. 31, 2020) (sale orders entered 54 days after petition date); *In re Loehmann's Holdings Inc.*, Case No. 13-14050, [ECF Docket No. 200] (Bankr. S.D.N.Y. Jan. 7, 2014) (sale order entered 23 days after petition date); *In re Dots*, Case No. 14-11016, [ECF Docket No. 132] (Bankr. D. N.J. Feb. 27, 2014) (sale order entered 38 days after petition date); *In re Love Culture*, Case No. 14-24508, [ECF Docket No.157] (Bankr. D. N.J. Aug. 7, 2014) (sale order entered 21 days after petition date); *In re Coldwater Creek*, Case No. 14-10867, [ECF Docket No. 439] (Bankr. D. Del. May 22, 2014) (sale order entered 41 days after petition date).

In addition, key terms of the sale, including the minimum purchase price, Good Faith Deposit requirement, and the "free and clear" nature of the sale, will be publicly available for approximately four weeks prior to the Bid Deadline, and the proposed Bidding Procedures will be communicated to interested parties who engaged in due diligence (or expressed interest through Cascadia) prior to their approval.

1  Porter Decl. at ¶ 6.  The Receiver submits that all parties in interest will thereby be provided with adequate
2  notice and opportunity to participate in the process.  *See Alter Domus, LLC v. Winget*, No. 08-CV-13845,
3  2021 WL 9145012, at *10 (E.D. Mich. Mar. 4, 2021) (authorizing seven-day period between notice of
4  successful bid and sale hearing to approve judicial sale conducted in accordance with court-approved
5  procedures and overruling objection seeking full 28-day notice and objection period).

6         Finally, the Bidding Procedures contemplate that the Receiver will provide the Court with a
7  supplemental brief and supporting evidence in advance of the Sale Hearing (by April 4, 2025) (the
8  "Supplemental Submission").  The Receiver contemplates the Supplemental Submission will include (i) a
9  description of the full marketing and sales process undertaken by the Receiver and his agents (including
10  any permitted variances from the Bidding Procedures), (ii) the results of the sales process and any Auction
11  (including the identity and terms of the Successful Bid(s) and any Back-Up Bid(s)), (iii) a form of
12  Proposed Sale Approval Order for each Successful Bid and, if applicable, Back-Up Bid, (iv) evidence of
13  compliance with the Court-approved Bidding Procedures, and (v) any other appropriate support for the
14  Receiver's request that the Court confirm the sale(s) to each Successful Bidder and any Back-Up Bidder.
15  The requirement of a Supplemental Submission will ensure the Court has a sufficient record on which it
16  can exercise its discretion to confirm the sale(s).

17         Thus, the Receiver respectfully requests the Court schedule a Sale Hearing for April 7, 2025, set a
18  deadline of April 4, 2025 for the Receiver to file and serve his Supplemental Submission, and, subject to
19  the contents of the Supplemental Submission, approve the sale of the Assets at such Sale Hearing.

20  **IV.    Conclusion**

21         For all the reasons set forth above and in the Ex Parte Application, the Receiver respectfully
22  submits good cause exists for the Court to:

23         • enter the Proposed Bid Procedures Order, in the form attached hereto as **Exhibit 3**
24            (i) approving the Bidding Procedures; (ii) approving the Break-Up Fee as set forth in the
               Stalking Horse PSA; (iii) scheduling the Sale Hearing for April 7, 2025 at 1:30 p.m.; and
25            (iv) granting the related relief set forth therein; and

26         • following the Sale Hearing, enter each Proposed Sale Approval Order (i) approving the
27            sale of the applicable Assets pursuant to the Successful Bid or Backup Bid for such Assets,
               in accordance with the terms and conditions to be set forth in the Notice of Successful
               Bid(s) and Supplemental Submission, and (ii) granting related relief.

28

1

2    DATED: February 28, 2025                    Respectfully submitted,

3                                                COVINGTON & BURLING LLP

4                                                By: /s/ Joseph R. Dunn

5                                                Joseph R. Dunn (State Bar No. 238069)
                                                 jdunn@cov.com
6                                                Julia Philips Roth (State Bar No. 324987)
                                                 jphilipsroth@cov.com
7                                                COVINGTON & BURLING LLP
                                                 1999 Avenue of the Stars
8                                                Los Angeles, California 90067-4643
9                                                Telephone: + 1 (424) 332-4800
                                                 Facsimile: + 1 (424) 332-4749
10
                                                 Counsel for Receiver
11                                               DAVID P. STAPLETON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVER DAVID P. STAPLETON'S NOTICE OF MOTION AND MOTION FOR ORDERS
APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE
SALE OF CERTAIN REAL AND PERSONAL PROPERTY