JOSEPH R. DUNN (State Bar No. 238069)
jdunn@cov.com
JULIA PHILIPS ROTH (State Bar No. 324987)
jphilipsroth@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Attorneys for Receiver
DAVID P. STAPLETON

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>     Plaintiff,<br><br>vs.<br><br>TOUCHSTONE PISTACHIO COMPANY, LLC; FARSHID ASSEMI; FARID ASSEMI; DARIUS ASSEMI; NEEMA ASSEMI; MELISSA LAYNE; SONIA ROSEMARY ASSEMI; MARICOPA ORCHARDS, LLC; C&A FARMS, LLC; ACDF, LLC; CANTUA ORCHARDS, LLC; LINCOLN GRANTOR FARMS, LLC; PANOCHE PISTACHIOS, LLC; ADAMS GRANTOR LAND, LLC; GRANVILLE FARMS, LLC; SAGEBERRY FARMS, LLC; GRADON FARMS, LLC; MANNING AVENUE PISTACHIOS, LLC; ASSEMI AND SONS, INC.; WINSTON FARMS, LLC; FFGT FARMS, LLC; FAVIER RANCH, LLC; GRANTLAND FARMS, LLC; WHITESBRIDGE FARMS, LLC; ACAP FARMS, LLC; BEAR FLAG FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; WILLOW AVENUE INVESTMENTS, LLC; ASHLAN & HAYES INVESTMENTS, LLC; ASSEMI BROTHERS, LLC,<br>     Defendants. | Case No. 1:24-cv-01105-JLT-SKO<br><br>**RECEIVER DAVID P. STAPLETON'S OMNIBUS:**<br><br>**(I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND**<br><br>**(II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]**<br><br>Hearing:<br><br>Date:   March 17, 2025<br>Time:   1:30 p.m. PT<br>Courtroom: Courtroom 6, 7th floor<br>      2500 Tulare Street<br>      Fresno, CA  93721 |

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

|  |  |
|---|---|
|  | Judge:       Hon. Kirk E. Sherriff |
|  | Action Filed:  September 17, 2024 |

Receiver David P. Stapleton ("Receiver"), by and through his undersigned counsel, submits this omnibus (i) opposition to the *Motion to Implement Procedures Coordinating Receivership Sale Process* (the "Coordination Motion") [Dkt. 147] filed by certain moving party defendants identified therein (the "Maricopa Defendants"), including Touchstone Pistachio Company, LLC ("Touchstone"), and (ii) reply in support of *Receiver David P. Stapleton's Notice of Motion and Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of Certain Real and Personal Property* (the "Bid Procedures Motion")[1] [Dkt. 131].

## I.    Introduction

The Receiver has presented the Court with detailed, comprehensive and well-reasoned Bidding Procedures intended to formalize the process under which the primary remaining assets of this Receivership Estate will be sold. These Bidding Procedures were not crafted in a vacuum or with guesswork as to what process would drive value. For months, the Receiver and his agents have been marketing the Assets and talking to potential buyers, and ultimately engaged in lengthy negotiations with the Stalking Horse Bidder. Those negotiations resulted in the Stalking Horse PSA, providing for the sale of the Assets for over $30 million, subject to overbidding, and on the timeline set forth in the Bidding Procedures.

As set forth in Bid Procedures Motion, the Receiver, his agents and potential buyers all agree that an expeditious sale process will maximize value by providing the Successful Bidder with sufficient time to modify the Facility as necessary, secure grower supply contracts (if necessary) and take advantage of the fast-approaching 2025 pistachio harvest season. Injecting delay in this sale process, as requested by

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Motion or, to the extent not defined therein, the meanings ascribed to them in the Coordination Motion.

2

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

the Maricopa Defendants, will create unnecessary expense for the Receivership Estate (including hundreds of thousands per month of carrying costs) and increase the risk that purchasers will get cold feet as the window between a potential acquisition and start of the 2025 harvest grows smaller. The Bidding Procedures and proposed timeline balance these interests and leverage the extensive marketing and sale processes already carried out by the Receiver and, prior to his appointment, Touchstone and the other Maricopa Defendants. Now, with the Stalking Horse PSA and U.S. Bank's consent in hand, the Receiver seeks to maximize the value of the Assets by efficiently completing the sale process that has been ongoing, in one form or another, for the past fifteen (15) months.

In response, not a single party presented any opposition to the relief requested. Indeed, the _only_ request made by any party to modify _any_ aspect of the proposed Bidding Procedures was the suggestion by the Maricopa Defendants[2] – a group comprised of Touchstone and various Assemi-affiliated farming entities – that the timeline for the Receiver to solicit bids, conduct an Auction, seek Court approval and effectuate a Closing be arbitrarily extended for an additional thirty (30) days.[3] The sole basis presented for the thirty-day extension is the purported need "to facilitate coordination of the sale processes among the Metropolitan Receiver, Prudential Receiver and [the Receiver]."

The proposed "coordination" would impose additional obligations on the Receiver (and the other receivers) to participate in "Consultation Groups," routinely share information with the Maricopa Defendants, and engage in "good faith discussions" with the Maricopa Defendants on issues related to "any sale process or issue related thereto." All of this with the stated goal of maximizing "enterprise

---

[2] *See* Maricopa Defendants' *Response to Receiver David P. Stapleton's Notice of Motion and Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of Certain Real and Personal Property; Declaration of Jason Hollrah In Support Thereof* (the "Response") [Dkt. 137].

[3] The Receiver's original Bidding Procedures proposed a Bid Deadline of April 1, 2025. Although the Maricopa Defendants did not specify any proposed extended dates in their Response, the Receiver assumes the Maricopa Defendants are proposing that the Bid Deadline be extended to May 1, 2025, with the other dates similarly extended.

3

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

value" under the not-so-veiled threat that the Maricopa Defendants may file bankruptcy if the parties do not coordinate in good faith.

Notably absent from the Response or the Coordination Motion is any credible evidence or cogent argument that a thirty-day extension of the Receiver's timeline will result in any benefit to the proposed sale process for the Assets, the Touchstone Receivership Estate or Touchstone's creditors – much less a benefit that outweighs the cost and risks of deviating from the Receiver's proposal. Instead, as set forth below, the requested extension appears solely focused on keeping the door open for a yet-unidentified buyer to present an actionable offer to purchase all of the assets of the enterprise – a buyer who has not emerged in the fifteen (15) months of marketing those assets. The Maricopa Defendants present no evidence that an additional thirty (30) days will result in any change of circumstances.

The Coordination Motion, as far as it relates to the Receiver, is similarly unsupported and problematic. The proposed coordination procedures are focused almost exclusively on the other receivers and the complexities of the farmland in those receivership estates, including issues related to water rights and the multiple liens. Those issues are not relevant to the Touchstone Assets – comprised of a single piece of real property, the Facility and the associated equipment, and the value of those Assets (as reflected in the Stalking Horse Bid) is not dependent ownership or control of the farmland of Touchstone's affiliates. And as set forth below, imposing the requested "consultation," "good faith" and other obligations on the Receiver is unnecessary, presents potential conflicts with existing fiduciary duties, and gives rise to a risk of costly and unnecessary disputes regarding the sale process. The Coordination Motion should be denied.

4

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

## II. Relevant Factual Background[4]

### A. The Proposed Sale Process

On September 27, 2024, Plaintiff and Touchstone stipulated to the appointment of a receiver because, among other things, both parties "recognize the value in minimizing the cost and uncertainty of litigation, as well as maximizing the value of the assets that are in dispute as a result of the Complaint." Dkt. 31 at ¶ 5. The stipulation and resulting Receivership Order also recognized that the focus of this case – and the Receiver's duty in this case, as an officer of the Court – is to maximize the value of the Receivership Property for the benefit of Touchstone's creditors. Indeed, in the stipulated Receivership Order, the Court found "good cause" existed to appoint the Receiver to maximize the recovery to Touchstone's creditors "through the orderly sale of the assets of defendant Touchstone, and collection of obligations owed to Touchstone." Receivership Ord. at ¶ C.

Neither the parties' stipulation nor the Receivership Order impose any duties or obligations on the Receiver to devote resources to selling assets other than the Receivership Property, or to coordinate with third parties (other than providing required notice to parties in interest) regarding the Receiver's effort to conduct an "orderly sale of the assets of defendant Touchstone." Instead, the Receiver has broad discretion to select the appropriate method and procedures for selling Receivership Property. *See* Receivership Ord. at ¶ 3 ("The Receiver is authorized to sell or otherwise liquidate or dispose of any or all of the Receivership Property by public or private sale or such other method ***as deemed appropriate by the Receiver exercising business judgment***.") (emphasis added). As set forth in the Bid Procedures Motion, the Receiver has proposed to sell such Assets through a public sale process, in compliance with his obligations under the Receivership Order and applicable law, including 28 U.S.C. § 2001.

The Assets (along with the assets of the other Maricopa Defendants) were the subject of a nine-month pre-Receivership marketing process by Cascadia. Dkt. 131-2 ("Porter Decl.") at ¶ 4. That sale

---

[4] The more detailed factual background set forth in Section II of the Bid Procedures Motion is incorporated by reference herein.

opportunity was widely publicized and numerous parties (approximately 43) entered into non-disclosure agreements and otherwise participated in due diligence. *Id.* Despite the breadth of that process and range of participation, it did not result in acceptable offers to purchase the Touchstone assets, much less a combined bid for the Touchstone assets and assets of the other Maricopa Defendants, and this Receivership case (along with the other receivership cases) followed thereafter.

Over two months ago, the Receiver engaged Cascadia to pick up where it left off with the Touchstone assets, including preparing a data site for due diligence and contacting interested parties from the pre-Receivership process, along with additional potential purchasers, to inform them of the opportunity to purchase the Assets. Porter Decl. at ¶ 5. The Receiver's efforts ultimately resulted in negotiations with multiple parties, including the Stalking Horse Bidder, and after extensive negotiations the Receiver reached an agreement on the Stalking Horse PSA. Dkt. 131-1 ("Stapleton Decl.") at ¶ 6. Importantly, the Stalking Horse Bidder and other parties expressed their willingness to pay a premium for the Assets if a sale transaction could be consummated promptly, with sufficient time to maximize use of the Facility to process pistachios from the upcoming 2025 harvest season. *Id.* at ¶ 11. Thus, the Receiver proposed Bidding Procedures that balance expediency and market exposure, and provide potential purchasers with full and fair opportunity to (i) conduct any additional diligence over an approximately four-week period, (ii) prepare and submit a Qualified Bid to purchase the Assets (or less than all the Assets) at a sufficient overbid price, and (iii) then participate in the Auction. *Id.* at ¶¶ 8, 11.

When formulating the Bidding Procedures, the Receiver duly considered whether coordination on sale processes with the Prudential Receiver (whose estates hold the majority of the Maricopa Defendants' farmland) would result in additional net value *for the Assets of the Touchstone Receivership Estate*. *Id.* at ¶ 5. Over the past two months, the Receiver and his agents have regularly communicated with the Prudential Receiver and his agents regarding the status of the sale process for the assets of his estates. Through those conversations, it became clear that the sale of real property and other assets held by the Prudential Receiver (and other receivers) will involve significantly more time and complexity than the straightforward, independent sale of the Touchstone Assets – which are comprised of a single piece of

6

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

real property, without the water rights issues attendant to farmland, and involve the liens and consent rights of a single secured lender. Moreover, those conversations confirmed that neither the Receiver, the Prudential Receiver nor the Metropolitan Receiver have become aware of any written "expression of interest" from a potential purchaser that is prepared to submit a reasonable bid for the assets of multiple receivership estates, much less a higher price for the Touchstone Assets than the Stalking Horse Bid. While the Receiver remains open to considering such a bid, should it ever surface, the Receiver concluded there was no evidence that any coordination effort with other receivership estates would be practical or would result in a benefit that outweighed the risk and cost to the Touchstone Receivership Estate.

### B. The Response and Coordination Motion

In the Response, the Maricopa Defendants only request a single modification to the Bidding Procedures – an extension of the sale timeline by thirty (30) days – purportedly "to allow for the best opportunity to maximize the value of those assets through a coordinated sale." However, the Response is devoid of any clues regarding (i) what type of coordinated sale process could be accomplished within this proposed thirty (30) day extension, or (ii) any basis for the implication that an additional thirty (30) days would result in obtaining higher and better offers for the Touchstone Assets. To the contrary, the declaration of Jason Hollrah, the CEO of Assemi Group,[5] emphasizes the complexity of the *other* Maricopa Defendants' farmland assets, including competing water rights issues and multiple lenders with liens on single parcels of property. Indeed, not surprisingly, the Response and Mr. Hollrah's declaration focus almost exclusively on the need to coordinate sales processes *for the farmland assets*, not the Touchstone Assets.

Five days later, the Maricopa Defendants filed the Coordination Motion, requesting the Court impose various coordination requirements on the three receivers in connection with their respective sales

---

[5] Mr. Hollrah's declaration asserts he is familiar with the so-called "MetLife" collateral and a number of Maricopa Defendants other than Touchstone. It is unclear whether and to what extent Mr. Hollrah has a relationship and familiarity with Touchstone and its assets, other than stating that "the ownership of the Maricopa Defendants process crop grown on the agricultural land in the facility of [Touchstone]." Response at 7:20-22.

7
RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

efforts. Relevant to Touchstone, the Coordination Motion asserts that the value of the Facility "will be maximized when sold along with contracts to process the pistachios grown on the land, which are separately under control of the Metropolitan Receiver and the Prudential Receiver." Coord. Motion at 9:19-22. The Coordination Motion then seeks to impose various obligations on the Receiver, including:

- Participating in status conferences with the Touchstone Consultation Group when convened by the Prudential Receiver to discuss the Receiver's sale process for the Assets;
- Disclosing "bidder interest and discussions" and "updates on any offers received" with the Maricopa Defendants and others in the Touchstone CG; and
- Consulting "in good faith" with the Maricopa Defendants regarding, among other things, "the impact of the proposed sale of any property on all creditors and parties in interest."

As with the Response, the Coordination Motion is devoid of any explanation on how the thirty (30) day extension sought by the Maricopa Defendants – much less the coordination obligations they seek to impose – will enhance the likelihood of maximizing the value of *the Touchstone Assets*. Instead, the Coordination Motion and proposed coordination obligations are almost exclusively focused on solving for the complexities attendant to selling the farmland in other receivership estates.

Because the Maricopa Defendants have not established that their requested delay and coordination obligations will benefit the Touchstone receivership estate, as set forth below, the Court should reject these efforts to modify the Receiver's carefully formulated Bidding Procedures.

### III.   Argument

####    A.   The 30-Day Extension Request Should be Denied

The sole issue raised in response to the Bid Procedures Motion is the Maricopa Defendants' request to extend the proposed Bid Deadline from April 1, 2025 to May 1, 2025, for the stated purpose of facilitating "coordination" among the three receivers. That request is based on the premise that extending the Bid Deadline and imposing coordination obligations on the Receiver will result in the emergence of a buyer that will present an acceptable offer to purchase the assets of all Maricopa Defendants across the various receivership estates. The request should be denied for two primary reasons.

8

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

First, the Maricopa Defendants present no evidence that an extension of time will result in any benefit to *this* Receivership Estate. The Maricopa Defendants present no insight regarding what they believe would be accomplished during the requested extension that could not be accomplished under the timeline proposed by the Receiver. The Response (and Coordination Motion) omit that the Maricopa Defendants themselves already conducted a coordinated sale process for at least nine months prior to this receivership case, and that process did not result in the emergence of an acceptable offer to purchase the Assets alongside the farmland assets of the other receivership cases.[6] Porter Decl. at ¶ 4. To the extent the parties who participated in that process are now interested in submitting a bid on the Assets, they will have sufficient time under the proposed Bidding Procedures to conduct any additional due diligence and submit a Qualified Bid.

Nor can the Maricopa Defendants credibly argue that any such joint bidder would be in any better position to submit a Qualified Bid if the extension were granted. The Response, the Coordination Motion and the declaration of Mr. Hollrah make clear that it will likely take significant time for potential buyers of the farmland to complete due diligence, sort through complex water rights issues, and negotiate allocation issues with the multiple lenders on these properties. There is simply no evidence any potential "unicorn" buyer would be in any better position after the requested extension to submit an acceptable joint bid for assets across the receiverships. And, as set forth below, the requested coordination procedures are unnecessary and should be denied.

Second, even assuming the requested extension would increase the likelihood of obtaining an acceptable joint bid, the Receiver is not aware of any evidence that the benefit of additional time would outweigh the cost and risk of delaying the sale process for the Assets. As set forth in the Bid Procedures

---

[6] Other than Mr. Hollrah's bare reference to receiving unspecified "expressions of interest" from buyers who wish to acquire assets across the receivership estates, the Maricopa Defendants have not provided evidence of any current desire by any such potential purchaser to submit a joint bid – much less one that may be acceptable. The undersigned counsel for the Receiver requested the Maricopa Defendants provide any written "expressions of interest" and contact information for any such "buyers." To date, no such writings or contact information has been provided.

Motion, the Receiver believes time is of the essence in maximizing the value of the Assets. Stapleton Decl. at ¶ 11. The Stalking Horse Bidder, among other potential purchasers, has placed a premium on purchasing the Assets with sufficient time to capitalize on the forthcoming 2025 pistachio harvest. *Id.* The timeline in the Bidding Procedures was constructed precisely to capture that premium for the Touchstone Receivership Estate and its creditors.

Any delay in that timeline will undoubtedly increase the risk that Potential Bidders, including the Stalking Horse Bidder, will feel they have insufficient time to prepare the Assets for the 2025 harvest, thereby jeopardizing the Receiver's ability to obtain maximum value for the Assets. Delaying the timeline will also increase the expense of the Receivership Estate, including significantly monthly costs to maintain, insurer, protect, store and pay taxes on the Assets. Thus, the extension requested in the Response would only be appropriate if supported by evidence that the actual benefit of delay is likely to outweigh the risks and costs of that delay. But the only basis cited by the Maricopa Defendants for their requests is the unsupported assumption that an additional thirty days (and the requested coordination procedures) will produce a buyer who (i) has not emerged over the fifteen (15) months of marketing processes conducted by the Maricopa Defendants and the Receiver, (ii) would only purchase the Assets if given an additional thirty days, and (iii) would offer a higher purchase price than the Stalking Horse Bidder. While the Receiver has always been (and remains) willing to consider credible evidence that such a buyer exists, that evidence has not been presented to date. Thus, the Receiver believes, in the exercise of his business judgment, that there is no basis to risk the benefits of the expeditious sale process proposed in the Bidding Procedures and agreed to by the Stalking Horse Bidder.

Because the Maricopa Defendants have not demonstrated that delaying the sale timeline will provide any net benefits to the Receivership Estate and Touchstone's creditors, the requested thirty (30) day extension should be denied.

**B.     The Coordination Motion Should be Denied as it Pertains to the Touchstone Receiver**

The thrust of the Coordination Motion is the Maricopa Defendants' stated belief that the value of the assets of the various receivership estates will be maximized if they are sold together as one unified "enterprise." Thus, the Maricopa Defendants request that the Court impose formal "coordination procedures" requiring the three receivers to share information with each other about buyers who may be interested in assets of other receivership estates. But the proposed coordination procedures go well beyond simple information sharing among the independent, court-appointed fiduciaries who are already seeking to maximize value for their respective estates. Instead, the Maricopa Defendants ask that the Court require these fiduciaries to formally involve the Maricopa Defendants in each step of the sale processes by imposing "good faith" obligations on each of the receivers to "consult" with the Maricopa Defendants and disclose and discuss the existence of bidders and bids. The proposed coordination procedures would also require the receivers to consider the interests of "all creditors and parties in interest." As they relate to the Receiver and this Receivership Estate, the proposed procedures are inappropriate, unnecessary and unsupported.

As an initial matter, the relief sought in the Coordination Motion is not supported by any legal authority. The Maricopa Defendants fail to cite any case where the court imposed similar obligations on independent fiduciaries to treat the distinct assets of their receiverships as a unified "enterprise." While the Assemis may have operated the Maricopa Defendants as such an enterprise prior to the receivership cases, each of the receivership estates, their assets, and their creditor constituencies are distinct. The Receiver is a fiduciary of the Touchstone Receivership Estate, and his duties must be carried out with the objective of maximizing the value of the Touchstone Receivership Property for the benefit of the Touchstone creditors. The Maricopa Defendants' seeming attempt to impose obligations on the Receiver to consider the interests of other receivership estates or their creditors is inconsistent with those duties.

Nor is there any reason to extend the Receiver's duties or treat the receivership estates as a dependent "enterprise" under the circumstances. The Touchstone Assets are distinct in material ways

11

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

from the complex patchwork of farmland that will be sold by the other receivers. Touchstone's pistachio processing facility and the single parcel of land on which it sits are not subject to the liens of multiple lenders, so there are no issues of allocation between multiple secured parties. Dkt. 145 at ¶ 4. Nor do the Touchstone Assets involve the same complex water access rights attendant to the farmland – issues the Maricopa Defendants assert would take years to unravel absent coordination between the Prudential and Metropolitan Receivers. While coordination may provide value to the receivers seeking to avoid those complexities through a larger sale process, those issues do not burden the Touchstone Assets. The Stalking Horse Bid confirms that buyers are willing to pay significant value for the Assets without a confirmed supply from the farms of the other Maricopa Defendants, and are willing to do so without further delay. Any attempt to tie together the sale processes will necessarily risk sacrificing the "bird in hand," to the potential detriment of Touchstone's creditors, in the hope that more value will emerge from an "enterprise" buyer. Based on the evidence presented to date, and the experience, analysis and judgment of the Receiver and Cascadia, the Receiver does not believe such a gamble is appropriate.

Moreover, the Receiver is already coordinating as necessary with the Prudential and Metropolitan Receivers. The Receiver has communicated regularly with the Prudential Receiver for months about the status of his sale process for the farmland assets and the potential timelines for purposes of assessing the value, if any, of any joint process. Stapleton Decl. at ¶ 5. And the respective receivers, their legal counsel, and their marketing agents have communicated consistently over the past few weeks specifically to discuss whether any evidence exists (including any credible expression of interest) to support the notion that a coordinated sale process would result in acceptable "enterprise" bids or otherwise confer benefits on the respective receivership estates. Based on those conversations, and the extensive work done by the Receiver, Cascadia, and the Receiver's other agents with respect to the Assets, the Receiver is not aware of any credible evidence supporting such consolidation or coordination. Nevertheless, as consistently communicated to the Maricopa Defendants since early January, the Receiver has been and remains willing, consistent with exercising his business judgment, to consider any new evidence that may arise. And he will continue to share information with the other receivers that may implicate their respective estates,

12

RECEIVER DAVID P. STAPLETON'S OMNIBUS: (I) OPPOSITION TO MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESS [DKT. 147]; AND (II) REPLY IN SUPPORT OF RECEIVER DAVID P. STAPLETON'S MOTION FOR ORDERS APPROVING CERTAIN BIDDING PROCEDURES AND BID PROTECTIONS AND CONFIRMING THE SALE OF CERTAIN REAL AND PERSONAL PROPERTY [DKT. 131]

including any expressions of interest in purchasing assets outside of the Touchstone Receivership Estate. Nothing more is necessary or required.

Finally, the Receiver is increasingly concerned that the relief sought by the Maricopa Defendants may serve the purpose (unintended or not) of creating avenues for potential unnecessary disputes regarding the sale process. The Receiver is an experienced fiduciary and an officer of the Court. His actions are subject to exercise of his business judgment and oversight of the Court, with notice and an opportunity for Touchstone and other parties in interest to be heard. Indeed, Touchstone stipulated to the appointment of the Receiver, and agreed to and recognized his duty to liquidate the Receivership Property, subject only to his business judgment.

Touchstone's attempt to now reshape that receivership process by imposing additional "good faith" requirements and consultation duties on the Receiver gives rise to increased risk that the parties will become embroiled in costly and unnecessary disputes regarding (i) whether a party is acting in "good faith," and (ii) whether the Receiver has adequately considered requests from the Maricopa Defendants to alter or extend the sale process. There is no reason to modify the guardrails already in place in this case, or to expose the Receivership Estate and the Court to the expense and delay of additional disputes regarding the Receiver's exercise of his business judgment.

The Coordination Motion should be denied.

### C. The Bidding Procedures Should be Approved, with Only Slight Modification to Account for a Revised Publication Window

The Receiver originally requested a March 5, 2025 hearing on the Bid Procedures Motion. *See* Ex Parte Application, Dkt. 133. Thus, the timeline proposed in the Bidding Procedures assumed entry of an order approving those procedures with sufficient time to first publish the Publication Notice under 28 U.S.C. § 2002 during the week of March 2, 2025. In light of the March 17, 2025 hearing on the Bid Procedures Motion, the proposed timeline in the Bidding Procedures must be adjusted to afford sufficient time for the Receiver to complete the required publication of sale.

Attached hereto as Exhibit A is a revised form of Bidding Procedures, with slight modifications to the dates and deadlines originally proposed by the Receiver to reflect entry of the Bid Procedures Order at or after the March 17, 2025 hearing. The revised dates will afford the Receiver the necessary time to complete the statutory publication process and provide any Potential Bidders with sufficient time to complete due diligence prior to the revised Bid Deadline. As reflected in the redline attached hereto as Exhibit B, no other changes have been proposed.

The Receiver respectfully requests the Court approve the Bidding Procedures in the form attached hereto as Exhibit A.

### IV. Conclusion

For the reasons set forth above and in the Bid Procedures Motion, the Maricopa Defendants' request for a thirty (30) day extension of the proposed sale timeline should be rejected, and the Coordination Motion denied as it relates to the Receiver.

DATED: March 14, 2025

Respectfully submitted,

COVINGTON & BURLING LLP

By: /s/ Joseph R. Dunn
Joseph R. Dunn (State Bar No. 238069)
jdunn@cov.com
Julia Philips Roth (State Bar No. 324987)
jphilipsroth@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Attorneys for Receiver
DAVID P. STAPLETON