# EXHIBIT A

## Exhibit A

## Bidding Procedures[1]

- **Due Diligence**: To access the data room established by the Receiver and receive the form of stalking horse purchase and sale agreement for the Assets[2] (the "Stalking Horse PSA") and/or a form of purchase and sale agreement for Assets in Lot 2 only (the "Equipment PSA"; together with the Stalking Horse PSA, the "PSAs"), and to otherwise participate in due diligence regarding the Assets,[3] a potential bidder must (i) enter into a confidentiality agreement in form and substance satisfactory to the Receiver (a "Confidentiality Agreement") and (ii) provide the Receiver with information concerning the identity of the potential bidder and financial qualifications that the Receiver may reasonably request and which the Receiver finds sufficient and satisfactory. Each person or entity that enters into a Confidentiality Agreement and satisfies the foregoing requirements is hereinafter referred to as a "Potential Bidder." The Receiver will accommodate Potential Bidders' reasonable requests for additional information and property access for purposes of inspection and reasonable due diligence. All diligence requests by Potential Bidders shall be directed to Scott Porter at sporter@cascadiacapital.com.

- **Bid Deadline**: **April 15, 2025 at 5:00 p.m. PT** (the "Bid Deadline").

- **Bid Requirements**: A bid from a Potential Bidder (each, a "Bid") must be submitted in the form of a purchase and sale agreement, reflecting the terms and conditions of the Bid (each, a

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in *Receiver David P. Stapleton's Notice of Motion and Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of Certain Real and Personal Property* (the "Motion") or the Stalking Horse PSA attached to the Proposed Bid Procedures Order as Exhibit B, as applicable.

[2] The term "Assets" used herein shall mean the "Acquired Assets," as that term is defined in the Stalking Horse PSA. The Assets include, among other things, (i) the real property consisting of that certain property identified in the Tulare County real property records as Assessor Parcel Numbers 319-130-25 and 319-130-26, inclusive of the real property located at 19570 Ave. 88, Terra Bella, CA 93270 in Tulare County, California, together with (a) the pistachio processing facility and all other buildings, structures, improvements and fixtures located thereon and (b) all rights, privileges, easements, rights and rights-of-way appurtenant thereto or used in connection therewith (collectively, the "Real Property"), (ii) personal property located at the Real Property that is owned by Touchstone and currently used by Touchstone in its operations thereon (the "Terra Bella Personal Property"), (iii) the personal property identified in Schedule 2.1.1(a)(vi) to the Stalking Horse PSA (the "Lot 1 Additional Equipment"; together with the Real Property and Terra Bella Personal Property, "Lot 1"), and (iv) the personal property identified in Schedule 2.1.1(b) to the Stalking Horse PSA ("Lot 2"; together with Lot 1, the "Lots" and each a "Lot"). Potential Bidders should refer to the description of "Acquired Assets" in the Stalking Horse PSA for a full description of the Assets.

[3] For the avoidance of doubt, the Assets shall not include any "Excluded Assets," as that term is defined in the Stalking Horse PSA. The Excluded Assets include, among others, Touchstone's (i) cash, (ii) prepayments, deposits, and similar rights, (iii) any Good Faith Deposits (defined below) held by the Receiver, (iv) accounts receivable, (v) crop inventory, (vi) computers, monitors, tablets, and other technology unrelated to the Assets, (vii) leased personal property, (viii) books and records, (ix) intellectual property, (x) claims and causes of action, and (xi) insurance policies. Potential Bidders should refer to the description of "Excluded Assets" in the Stalking Horse PSA for a full description of such assets which are not subject to these Bidding Procedures.

"Proposed PSA"), along with a redline against the form Stalking Horse PSA or Equipment PSA, as applicable, provided by the Receiver. The Proposed PSA shall (a) be duly authorized and executed; (b) be based on the form Stalking Horse PSA or Equipment PSA, as applicable, provided by the Receiver; (c) to the extent the Bid is for all Assets, specify the allocation of proposed purchase price between Lot 1 and Lot 2; and (d) include all exhibits and schedules contemplated by the Proposed PSA. The Proposed PSA must contain or be accompanied by the following (the "Bid Requirements"):

- Purchase Price: The amount of the proposed cash purchase price must equal or exceed (i) $30,905,000 for all Assets, (ii) $25,577,500 for all of Lot 1 only, or (iii) $5,327,500 for all of Lot 2 only (i.e., the purchase price set forth in the Stalking Horse PSA, *plus* the Break-Up Fee(s) (as defined in the Stalking Horse PSA), *plus* an overbid of at least $100,000 for all Assets, $75,000 for Lot 1 only, and $25,000 for Lot 2 only).

- No Other Material Alterations to Form PSA: The Proposed PSA must include all material terms in the form PSA provided by the Receiver, including the following:

    - No Representations and Warranties by the Receiver: The Proposed PSA shall provide that (i) the sale will be "as is" and "with all faults," without representations or warranties, and without recourse, and (ii) the Potential Bidder has relied solely on its independent diligence, and not on any representations of the Receiver or his agents, in formulating and submitting its Bid.

    - No Diligence or Financing Conditions: The Proposed PSA shall provide that the Potential Bidder has had sufficient opportunity to conduct all necessary due diligence regarding the applicable Assets prior to submitting its Bid, and no further due diligence is necessary or required. The Proposed PSA shall provide for payment of the purchase price in cash, and that the Potential Bidder's obligations under the Proposed PSA, including payment of the purchase price thereunder, are not subject to any financing or similar contingency.

    - Free and Clear: The Proposed PSA shall provide that the sale will be free and clear of liens, claims and encumbrances, other than easements, rights of way and other encumbrances running with the land, to the fullest extent permitted by applicable law.[4]

- Good Faith Deposit: A Potential Bidder making a Bid must make a deposit in the amount of ten percent (10%) of the proposed purchase price in its Bid (a "Good Faith Deposit") into a Receiver trust account to be identified and established by the Receiver, which Good Faith Deposit the Potential Bidder will forfeit if its Bid is selected as the Successful Bid or, if applicable, the Back-Up Bid (each defined below) and the Potential Bidder does not close by the Outside Date or Back-Up Closing Date, as applicable (for a reason other than non-approval by the Court, default by the seller, or mutual termination of the sale).

- Proof of Funds / Authority: The Potential Bidder must provide sufficient information, as reasonably requested by the Receiver, for the Receiver to verify the Potential

---

[4] Each Proposed Sale Approval Order will provide for all liens on the applicable Assets to attach to the proceeds of the sale to the same extent, priority and validity as exist at the time of sale. Potential Bidders are advised that the Assets are part of the collateral securing Touchstone's loan obligations to U.S. Bank, and sale of the Assets free and clear of U.S. Bank's liens and encumbrances is subject to U.S. Bank's consent.

2

    Bidder's ability to consummate the transaction contemplated by the Proposed PSA. Among other things, the Potential Bidder must provide (i) information demonstrating (in the Receiver's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate a purchase of the applicable Assets at the purchase price proposed in the Bid and (ii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission, execution, and delivery of its Bid, participation in the Auction (defined below), and closing of the transaction contemplated by the Proposed PSA.

- o  Other Information: The Potential Bidder must commit to closing the transaction contemplated by the Proposed PSA in the event it is selected as the Back-Up Bid at the conclusion of the Auction. The Potential Bidder must also provide a mailing address, email address and direct phone number for the person(s) authorized to discuss the Bid with the Receiver or his agents.

- o  Outside Date: The Potential Bidder must commit to closing the contemplated transaction by no later than the later of fourteen (14) calendar days after entry of the order approving the sale and (ii) April 8, 2025 (the "Outside Date").

- o  Acknowledgement by Potential Bidder: By submitting a Bid, each Potential Bidder shall be deemed to acknowledge that: (i) it understands and is bound by the terms of these Bidding Procedures; (ii) the Potential Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by the Receiver, Touchstone, U.S. Bank, or their respective agents and representatives, regarding any Assets subject to its Bid, these Bidding Procedures or any information provided in connection therewith; (iii) all due diligence regarding the assets which are the subject of its Bid must be completed prior to the Bid Deadline; and (iv) it submits its Bid of its own volition and with full knowledge of the potential consequences associated therewith. Each Potential Bidder shall bear its own costs and expenses in connection with the submission of its Bid, the Auction, the sale process and preparation of those documents necessary to effectuate the transaction contemplated by its Bid, whether or not such Potential Bidder becomes a Qualified Bidder (defined below) and whether or not the transaction contemplated by its Bid is ultimately approved by the Court and/or consummated.

- **Publication Notice**: In addition to the Receiver's marketing and other outreach efforts, the Receiver will publish the following notice at least once per week during the weeks beginning March 16, March 23, March 30, and April 6, 2025 in at least one of either The Fresno Bee or The Visalia Times-Delta (the "Publication Notice"):

    > NOTICE OF SALE OF REAL AND PERSONAL PROPERTY
    >
    > PLEASE TAKE NOTICE that in that certain action entitled *U.S. Bank National Association v. Touchstone Pistachio Company, LLC, et al.* (the "Action"), pending in U.S. District Court for the Eastern District of California (the "Court"), Case No. 1:24-cv-01105-KES-SAB, the Court-appointed receiver, David P. Stapleton (the "Receiver") intends to conduct an auction to sell (i) the real property owned by Touchstone Pistachio Company, LLC ("Touchstone"), located at 19570 Ave. 88, Terra Bella, CA 93270 in Tulare County, California (APNs: 319-130-025 and 319-130-026), together with the pistachio processing facility

and other buildings, structures, improvements, and fixtures located thereon, and the rights, privileges, easements, rights and rights-of-way appurtenant thereto, (ii) the personal property owned by Touchstone used in connection with operations thereon, and (iii) certain additional machinery and equipment owned by Touchstone (collectively, the "Property"). The Property will be sold pursuant to 28 U.S.C. § 2001(a), free and clear of monetary liens, claims and encumbrances, in "as is, where is" condition, and with no representations or warranties by the Receiver. Sale of the Property is subject to Court confirmation after the auction has completed.

On March 17, 2025, the Court entered an order approving bidding and sale procedures for the Property (the "Bidding Procedures"), including specific requirements that interested parties must meet to submit a qualified bid and participate in the auction. A complete copy of the Bidding Procedures can be obtained from the Receiver's marketing agent, Scott Porter of Cascadia Capital, LLC at sporter@cascadiacapital.com. Interested parties are urged to contact Mr. Porter and request a copy of the Bidding Procedures as soon as practicable.

To participate in the auction, interested parties must comply with the Bidding Procedures and submit a qualifying bid, good faith deposit and other documentation and information, in conformance with the Bidding Procedures, so that they are received by the Receiver no later than 5:00 p.m. PT on April 15, 2025 (the "Bid Deadline").

In the event the Receiver receives more than one acceptable, qualifying bid on Property prior to the Bid Deadline, the Receiver may select a bid to serve as the opening bid at an auction, at which qualified bidders will have the opportunity to submit overbids based on the purchase price and terms of the opening bid.

In the event the Receiver proceeds with the auction, such auction will take place April 17, 2025, beginning at 9:00 a.m. PT, at Regus, 265 East River Park Circle (1st Floor), Fresno, CA 93720. At the conclusion of the auction, the Receiver will select the winning bidder and the back-up bidder.

The Court has scheduled a hearing to confirm the sale to the winning bidder on April 21, 2025, at 1:30 p.m., at the Robert E. Coyle United States Courthouse, Courtroom 6, 7th Floor, 2500 Tulare Street, Fresno, California, 93721.

Any questions about the Property, the Bidding Procedures, the auction or the sale process should be directed to Mr. Porter using the contact information above.

- **Selection of Opening Bids and Qualification of Bidders**: After the Bid Deadline, the Receiver may, in his sole discretion, after consultation with U.S. Bank and U.S. Bank's counsel and/or other professional advisors (collectively, the "Consultation Parties"), select the highest

or otherwise best Bid(s) for the Assets (each, an "Opening Bid" and, collectively, the "Opening Bids"). A Bid will be valued by the Receiver based upon any and all factors that the Receiver deems pertinent in his reasonable business judgment, including, among others, (i) the proposed purchase price attributable to the applicable Assets in the Bid, (ii) the risks and timing associated with consummating the transaction with the Potential Bidder, and (iii) any other factors that the Receiver may reasonably deem relevant. The Receiver may select an Opening Bid that includes all of the Assets, or may select separate Opening Bids for Lot 1 and Lot 2.[5] Following the Bid Deadline, the Receiver is authorized to communicate and negotiate with Potential Bidders and U.S. Bank to (a) clarify, modify, or improve the terms of their Bids in connection with selecting the Opening Bid(s), (b) cure any defects that would prevent such Potential Bidder from becoming a Qualified Bidder (defined below), and/or (c) otherwise promote a more competitive bidding and auction process with the ultimate goal of maximizing the value of the Assets.

Only those Bids and Potential Bidders that (i) comply with the Bid Requirements by the Bid Deadline and (ii) confirm in writing that (a) the Potential Bidder has not engaged in any collusion with respect to the bidding process, (b) its Bid is a good faith bona fide offer that it intends to consummate if its Bid is selected as the Successful Bid or Back-Up Bid (each defined below), and (c) it consents to the Receiver sharing its Bid with all other Qualified Bidders will constitute, respectively, "Qualified Bids" and "Qualified Bidders" and be permitted to participate in the Auction (defined below).[6]

If the Stalking Horse PSA is the only Qualified Bid, the Receiver may cancel the Auction, and the Stalking Horse PSA shall then be the Successful Bid, and the Stalking Horse Bidder shall be the Successful Bidder (each as defined below).

- **Auction Instructions or Cancellation**: By **April 16, 2025,** the Receiver will:

    o (i) if at least one Qualified Bid, in addition to the Stalking Horse PSA, is received, provide Auction instructions and procedures, which will include a copy of any Opening Bid(s) (the "Auction Instructions") to all Qualified Bidders; or

    o (ii) if the Stalking Horse PSA is the only Qualified Bid received, file a notice with the Court and notify the Potential Bidders that the Auction is cancelled, and the Stalking Horse PSA has been deemed the Successful Bid (defined below).

- **Auction**: If multiple Qualified Bids are received, the Receiver will conduct an auction on **April 17, 2025 at 9:00 a.m. PT** at Regus, 265 East River Park Circle (1st Floor), Fresno, CA 93720 (the "Auction"). Only Qualified Bidders and representatives of the Receiver and U.S. Bank are permitted to attend the Auction. Each Qualified Bidder must appear in person or through a duly-authorized representative in person, who must be identified to the Receiver at least twenty-four (24) hours prior to the start of the Auction.

---

[5] For the avoidance of doubt, the Receiver is authorized to consider Bids for less than all of the Assets comprising Lot 2, and can exercise his reasonable business judgment, in his sole discretion, to determine whether such Bid constitutes a Qualified Bid, and whether Lot 2 should be subdivided at the Auction for separate overbidding to maximize the value of Assets comprising Lot 2.

[6] For the avoidance of doubt, the Stalking Horse PSA submitted by Zamora Pistachio, LLC (the "Stalking Horse Bidder") shall constitute a Qualified Bid. Potential Bidders can only become Qualified Bidders on the Assets which are the subject of their Bid, any may not participate in the Auction, if any, of Assets which were not included in their Bid.

5

At the commencement of the Auction, the starting bid(s) shall be the Opening Bid(s). Overbidding at the Auction will proceeds in increments of at least (i) $100,000 for Qualified Bids that include all Assets, (ii) $75,000 for Qualified Bids that include all of Lot 1 only, and (iii) $25,000 for Qualified Bids that include all of Lot 2 only.[7] All bids at the Auction are binding on the party submitting the bid and may not be withdrawn or modified once announced, must be <u>all cash</u> bids, and cannot be subject to any contingencies, including financing or due diligence contingencies, unless specifically provided for in these Bidding Procedures or the Opening Bid.

If the Receiver deems necessary or appropriate, the Receiver may continue or adjourn the Auction from time to time with the announcement of the first adjournment to be made to all Qualified Bidders no later than the original Auction date.

At the conclusion of the Auction, the Receiver, in consultation with the Consultation Parties, will select the highest or otherwise best offer for the Assets (or a subset thereof) as the "<u>Successful Bid</u>," and such bidder shall be the "<u>Successful Bidder</u>" with respect to the applicable Assets. The Receiver, in consultation with the Consultation Parties, will select the next highest or otherwise best offer for such Assets after the Successful Bid as the "<u>Back-Up Bid</u>," and such bidder shall be the "<u>Back-Up Bidder</u>." The Successful Bidder(s) and Back-Up Bidder(s) for the Assets, as applicable, shall, within two (2) business days after completion of the Auction, increase their respective Good Faith Deposits such that the respective amount on deposit by such bidder is equivalent to ten percent (10%) of the Successful Bid(s) and Back-Up Bid(s), respectively.

- **Modification of Certain Bidding Procedures**: Notwithstanding any of the foregoing, the Receiver shall have the right to extend the Bid Deadline, modify the Bid Requirements, modify the overbid increments, modify the Assets included in Lot 2, and/or modify the timing of providing the Auction Instructions to the Qualified Bidders at or prior to the Auction (as defined below), including, without limitation, by waiving certain Bid Requirements or imposing additional terms and conditions with respect to any or all Potential Bidders, without further order of the Court, subject to consultation with the Consultation Parties, if the Receiver determines in his business judgment that such modification is in the best interest of the Receivership estate.

- **Notice of Successful Bid(s) and Proposed Sale Approval Order(s)**: By **April 18, 2025**, the Receiver will file (i) a notice with the Court (the "<u>Notice of Successful Bid(s)</u>") identifying (a) the Successful Bid(s) for the Assets, as applicable, and (b) if applicable, the Back-Up Bid(s) for such Assets, and (ii) any supplemental briefing and evidence in support of approval of such Successful Bid(s) and, if applicable, such Back-Up Bid(s). The Notice of Successful Bid(s) will include a form of Proposed Sale Approval Order for each Successful Bid, with a copy of the signed purchase agreement constituting such Successful Bid (and a copy of the respective Back-Up Bid purchase agreement, if applicable) attached thereto.

    o If a Potential Bidder's Bid is not selected as a Qualified Bid, a Successful Bid or a Back-Up Bid for the Asset(s) which are the subject of its Bid, the Receiver will return such Potential Bidder's Good Faith Deposit as soon as practicable, but no later than seven (7) business days following the filing of the Notice of Successful Bid(s). The Receiver shall retain the Good Faith Deposit(s) submitted in connection with each

---

[7] To the extent the Receiver determines, in his discretion, to subdivide Lot 2 for overbidding at the Auction, the Receiver shall identify that subdivision to all Qualified Bidders for Lot 2. The Receiver will set the amount of any minimum overbids and bidding increments on the subdivided lots in his discretion before or during the Auction.

    Successful Bid and, if applicable, each Back-Up Bid until the closing of the sale of the respective Asset(s) which are the subject of such Bids. At the closing of the sale of such Asset(s) pursuant to a Successful Bid (or the Back-Up Bid, if applicable), the purchaser will be entitled to a credit against the purchase price in the amount of its Good Faith Deposit with respect to such Asset(s). If a Potential Bidder that submitted a Successful Bid (and/or a Back-Up Bid, if applicable) fails to close by the Outside Date or Back-Up Closing Date, as applicable (for a reason other than non-approval by the Court, default of the seller under the applicable Proposed PSA, or mutual termination of the applicable Proposed PSA), the corresponding Good Faith Deposit(s) will become Receivership Property. If a Successful Bid closes prior to the Outside Date, the Receiver will return the Good Faith Deposit for the Back-Up Bid as soon as practicable thereafter, but no later than seven (7) business days after the closing date of the sale to the Successful Bidder.

- **Sale Hearing:** On **April 21, 2025 at 1:30 p.m. PT**, the Court will conduct a hearing to approve each Successful Bid (and each Back-Up Bid, if applicable) for the Assets (the "Sale Hearing"); provided that if the Stalking Horse PSA is the only Qualified Bid for the Assets, and such Stalking Horse PSA has been accepted as the Successful Bid (and the Auction has therefore been cancelled), the Receiver may seek an earlier Sale Hearing date. Any objections to the approval of a Successful Bid and/or Back-Up Bid or the form of a Proposed Sale Approval Order, and any response thereto by the Receiver, may be raised and presented at or before the Sale Hearing.

- **Closing; Notice of Closing**: If a Successful Bid fails to close by the Outside Date, the Receiver may proceed to consummate the Back-Up Bid for such Asset(s) (if any) without need for a further hearing or further order of the Court, by providing written notice to the Back-Up Bidder for such Asset(s). The Back-Up Bidder will be required to close no later than seven (7) business days of receipt of written notice from the Receiver that the Successful Bid has failed to close (the "Back-Up Closing Date"); provided that the Receiver may, in his discretion, extend the Back-Up Closing Date. Promptly after the closing of the sale pursuant to a Successful Bid (or a Back-Up Bid, if applicable), the Receiver will file a notice of such closing with the Court.