UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>TOUCHSTONE PISTACHIO COMPANY, LLC; FARSHID ASSEMI; FARID ASSEMI; DARIUS ASSEMI; NEEMA ASSEMI; MELISSA LAYNE; SONIA ROSEMARY ASSEMI; MARICOPA ORCHARDS, LLC; C&A FARMS, LLC; ACDF, LLC; CANTUA ORCHARDS, LLC; LINCOLN GRANTOR FARMS, LLC; PANOCHE PISTACHIOS, LLC; ADAMS GRANTOR LAND, LLC; GRANVILLE FARMS, LLC; SAGEBERRY FARMS, LLC; GRADON FARMS, LLC; MANNING AVENUE PISTACHIOS, LLC; ASSEMI AND SONS, INC.; WINSTON FARMS, LLC; FFGT FARMS, LLC; FAVIER RANCH, LLC; GRANTLAND FARMS, LLC; WHITESBRIDGE FARMS, LLC; ACAP FARMS, LLC; BEAR FLAG FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; WILLOW AVENUE INVESTMENTS, LLC; ASHLAN & HAYES INVESTMENTS, LLC; ASSEMI BROTHERS, LLC,<br><br>Defendants. | Case No. 1:24-cv-01105-KES-SAB<br><br>**ORDER AUTHORIZING RECEIVER DAVID P. STAPLETON TO ENGAGE CASCADIA CAPITAL, LLC AS MARKETING AGENT**<br><br>(Doc. 133) |

Upon due consideration of Receiver's Ex Parte Application to (I) Shorten Time on Receiver's Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of Assets And (II) Authorize Receiver to Engage Cascadia Capital, LLC as Marketing Agent, Doc. 133 (the "Application"),[1] and the declarations of David P. Stapleton, Scott Porter and Joseph R. Dunn referenced in the Application, the Court hereby finds that good cause exists to enter an order authorizing the Receiver to retain Cascadia as marketing agent for the Assets and granting related relief.  Having found the foregoing:

A.      On September 28, 2024, the Court entered an Order Appointing Receiver in the above-captioned matter at Dkt. 32 (the "Receivership Order").

B.      The Receivership Order authorizes the Receiver to employ a marketing agent to sell the assets of Touchstone Pistachio Company, LLC ("Touchstone"), including the Terra Bella Assets, on contingency commission arrangement based on the close of any such sale, subject to Plaintiff's prior written consent and approval of the Court.

C.      The Receiver has represented that Plaintiff has provided its written consent to the Receiver's proposed retention and compensation of Cascadia as set forth in the Application.

D.      Good cause exists to enter an order authorizing the Receiver to engage Cascadia in accordance with the terms and conditions set forth in the Cascadia Advisory Agreement attached to this Order.

Having found the foregoing,

**IT IS ORDERED:**

1.      The Receiver is authorized to engage Cascadia as marketing agent for the Assets in accordance with the terms and conditions set forth in the Cascadia Advisory Agreement, a copy of which is attached hereto as **Exhibit A** and incorporated by reference.

2.      The Receiver is authorized to compensate and reimburse Cascadia in accordance with the terms of the Cascadia Advisory Agreement, subject to the procedures for compensation of professionals set forth in paragraph 32 of the Receivership Order and any other applicable

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Application.

orders of the Court.

3.     The Court reserves exclusive jurisdiction with respect to all matters relating to or arising from or under this Order, including any matters related to the implementation, interpretation, or enforcement of this Order.

IT IS SO ORDERED.

Dated:   March 17, 2025

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

Touchstone Pistachio Company – February 2025

## ADVISORY AGREEMENT

This Advisory Agreement (this "**Agreement**") is entered into as of February 27, 2025 (the "**Execution Date**") by and between (i) David P. Stapleton (the "**Receiver**"), solely in his capacity as the court-appointed receiver for Touchstone Pistachio Company, a California limited liability company ("**Company**"), and (ii) Cascadia Capital, LLC, a Washington limited liability company ("**Cascadia**", and with the Receiver, the "**Parties**" and each a "**Party**").

1.     **Receivership and Receivership Court Approval.** Cascadia acknowledges that the Receiver has been appointed as receiver for the assets of Company pursuant to that certain order entered on September 28, 2024 as Docket No. 32 (the "**Receivership Order**") in *U.S. Bank National Association v. Touchstone Pistachio Company, LLC et al.*, Case No. 1:24-cv-01105-KES-SKO (the "**Receivership Case**") pending in the United States District Court for the Eastern District of California (the "**Court**"). Following the Execution Date, the Receiver shall promptly seek Court approval of this Agreement and the Receiver's retention of Cascadia to provide the Services (as defined below) on the terms therein (any such order approving the retention, the "**Retention Order**"). The "**Effective Date**" of this Agreement shall occur on the date the Court enters the Retention Order. For the avoidance of doubt, unless and until the Court enters the Retention Order, this Agreement shall not become effective and the Parties shall not have any obligations hereunder.

2.     **Advisory Relationship.** During the Term (as defined below), Cascadia shall be the exclusive provider to the Receiver of the advisory services (the "**Services**") described on Exhibit A attached hereto.

3.     **Fees and Expenses.** As consideration for the Services to be provided by Cascadia and other obligations set forth in this Agreement, Cascadia will be entitled to payment from Receiver, solely from Receivership Property or Receivership Advances, subject to the limitations of the Receivership Order and the Retention Order, of the amounts specified in Exhibit B attached hereto at the times and upon the conditions specified therein. For the avoidance of doubt, the Receiver and his agents, attorneys, accountants or employees shall not have any personal liability for any amounts owed to Cascadia under this Agreement.

4.     **Term and Termination.** Cascadia shall provide the Services from the Effective Date until the earliest of (a) the termination of this Agreement pursuant to the following sentence of this Section 4, (b) the successful completion by Cascadia of the Services, or (c) the date the Receiver ceases to serve as receiver in the Receivership Case (the "**Term**"). For purposes of clarity, unless otherwise provided in the Retention Order, this Agreement shall govern any Services provided to Receiver by Cascadia prior to the Effective Date. Either Party may terminate this Agreement after six months of the date hereof by giving 30 days prior written notice. Notwithstanding any expiration or termination of the Term, Sections 5, 6, 7, 8, 9, and 10 of this Agreement, and the exhibits referenced therein, shall survive and remain in full force and effect.

5.     **Relationship of Parties.**

(a)     Receiver acknowledges and agrees that Cascadia has been retained to act solely as an advisor to the Receiver and not as an advisor to any other person, and the Receiver's

160692389.3

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

engagement of Cascadia is not intended to confer rights upon any person (including equity holders, directors, officers, employees, agents or creditors of the Company) not a party hereto as against Cascadia or its affiliates, or their respective directors, officers, employees or agents, and their successors and assigns. Any obligations of Cascadia arising out of its engagement under this Agreement shall be owed solely to the Receiver, and only as provided herein. Cascadia shall have no authority to enter into contracts that bind the Receiver or the Company or create obligations on the part of the Receiver or the Company unless expressly agreed to by the Receiver in writing.

(b)     Receiver acknowledges and agrees that Cascadia does not and shall not provide, and is not providing, accounting, tax, legal, insurance, regulatory or other similar professional advice in any jurisdiction. Receiver should consult with his own advisors concerning such matters and is responsible for making its own independent investigation and appraisal of the transactions contemplated by this Agreement, and Cascadia shall have no responsibility or liability to Receiver, the Company or its creditors or equity holders with respect to such matters. Receiver acknowledges that Cascadia will not be distributing securities or acting as an agent with respect to the placement of any securities for any party pursuant to this Agreement.

(c)     Cascadia shall not be responsible for or undertake to conduct due diligence, financial or otherwise, on any third party in connection with Cascadia's engagement hereunder. Any due diligence actually conducted by Cascadia will be limited solely to performing such review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of Receiver. Receiver shall be solely responsible for any decision to effect or not to effect a Transaction (as defined in Exhibit A) as well as the price, terms or structure of any such Transaction.

6.     **Use of Information; Confidentiality**.

(a)     Receiver agrees to furnish (or use reasonable efforts to cause other parties, including the Company, to furnish) Cascadia with such information as it reasonably requests in connection with Cascadia's performance of the Services (the "**Information**"). Receiver agrees to promptly inform Cascadia upon becoming aware that any of the Information provided to Cascadia is materially inaccurate, incomplete or misleading during the Term. Receiver agrees that Cascadia bears no responsibility for the accuracy and completeness of the Information and acknowledges that Cascadia will be using and relying on the Information without performing independent verification or evaluation of any part of the Information.

(b)     During the Term and for a period of two years from the date during the Term on which Information is last disclosed under this Agreement, Cascadia will treat all non-public Information confidentially and will not disclose such Information without the Receiver's prior consent except (i) as expressly permitted in this Agreement, (ii) to Cascadia's affiliates, officers, employees, agents and representatives in connection with providing the Services, (iii) if such Information was already in the possession of Cascadia or its affiliates prior to disclosure by or on behalf of the Company, except such Information received by Cascadia or its affiliates pursuant to that certain Advisory Agreement entered into as of December 28, 2023 by and between Maricopa Orchards, LLC and Cascadia and as amended effective April 10, 2024 (the "**Maricopa Agreement**"), (iv) if such Information is made publicly available other than by Cascadia in

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

violation of this Agreement or the Maricopa Agreement, (v) if such Information becomes available to Cascadia on a non-confidential basis from a source Cascadia reasonably believes is not prohibited from disclosing such Information (which, for the avoidance of doubt, shall not include Information received by Cascadia pursuant to the Maricopa Agreement), or (vi) as is otherwise required by law or judicial or regulatory process, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules.

(c)     Receiver acknowledges and agrees that any written or oral advice, recommendations or analyses that Cascadia provides in connection with this Agreement and the Services are exclusively for use by the Receiver and may not be disclosed to any third party (other than the plaintiff in the Receivership Case with the agreement that such advice, recommendations or analyses be kept confidential), or circulated or referred to publicly without Cascadia's prior written consent, unless otherwise ordered by the Court.

(d)     If a Transaction is successfully completed, Receiver agrees that Cascadia may, at its own expense, disclose the Transaction in client marketing materials and place announcements, press releases or advertisements in print or electronic publication media, including, without limitation, website postings, social media, financial newspapers and journals, describing Cascadia's services hereunder (and including the Receiver and/or Company's name and logo or other identifying marks).

7.     **USA Patriot Act Notice.**  To help the government fight the funding of terrorism and money laundering activities, U.S. federal law requires Cascadia to obtain, verify, and record information that identifies each person and business entity that establishes a business relationship with the financial institution.  Accordingly, Receiver will provide to Cascadia upon request the full name of Receiver, his principal place of business, local office or other physical location, his (or his company's) U.S. taxpayer identification number, and other information or documentation required to verify the identity of Receiver and his affiliates, and Cascadia will take whatever steps it deems appropriate to verify the information provided.

8.     **No Effect on Prior Indemnification:** Nothing herein shall modify or affect Cascadia's rights to indemnification under the Maricopa Agreement for work performed under that agreement prior to the Effective Date.

9.     **Potential for Conflicts of Interest**.

(a)     Receiver acknowledges and understands that Cascadia and its affiliates have had, may currently have or may have in the future, financial advisory or other relationships with competitors, suppliers and customers of Receiver and/or the Company, and other parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to Receiver and/or the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise.  Nothing in this Agreement shall limit or preclude Cascadia or its affiliates from accepting engagements for, engaging in or carrying on business with such parties, provided that such other engagements do not interfere in any way with Cascadia's obligations under this Agreement or providing the Services necessary to support the Receiver's pursuit of a Transaction within the Term.

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

(b)      In the course of such relationships and such investments and positions, Cascadia and its affiliates may acquire information about Receiver, the Company, a Transaction, or such other parties or information that may be of interest to Receiver, and Receiver agrees that Cascadia shall have no obligation to disclose such information, or the fact that Cascadia is in possession of such information, to Receiver, or use such information on Receiver's behalf. Cascadia's representation of any of its clients (past, present and future) will not limit, in any way Receiver's obligation under this Agreement.

10.    **Miscellaneous.**

(a)      **Assignment; Binding Effect; Amendments and Waivers.**    This Agreement shall not be assigned by either Party hereto without the prior written consent of the other Party.  Any purported assignment made in violation of this Section 10 (a) shall be void.  This Agreement shall be binding on the parties hereto and their respective successors and assigns, and any successor or assign of any substantial portion of their respective business or assets.  The terms of this Agreement may be amended or waived only with the written consent of the Parties.

(b)      **Entire Agreement.**    This Agreement, including the exhibits attached hereto, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all agreements and understandings with respect to the subject matter hereof and thereof, whether written or oral.  Receiver and Cascadia each agree that, in entering into this Agreement, it is not relying on any representation, promise or statement made by the other that is not expressly set forth in this Agreement.

(c)      **Notices.**    Any notices and other communications required or permitted by this Agreement shall be given in writing and shall be deemed effectively given: (i) upon personal delivery; (ii) upon transmission by e-mail;  (iii) three business days after deposit with the United States Post Office, by registered first class mail, postage prepaid; or (iv) one business day after sent by nationally recognized commercial overnight courier, courier fees prepaid, in each case to the parties at the addresses and e-mail addresses set forth in the signature blocks hereto.

(d)      **Choice of Law.**    The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws.

(e)      **Severability.**    If one or more provisions of this Agreement are held to be unenforceable under applicable law, the Parties agree to renegotiate such provision(s) in good faith.  In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision(s), then: (i) such provision(s) shall be excluded from this Agreement; (ii) the balance of this Agreement shall be interpreted as if such provision(s) were so excluded; and (iii) the balance of this Agreement shall be enforceable in accordance with its terms.

(f)      **Counterparts.**    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

Touchstone Pistachio Company – February 2025

instrument. Such counterparts may be delivered by facsimile or other electronic transmission, which shall be valid for all purposes.

(g)    **Choice of Forum.**  The Parties agree that any action or proceeding related to this Agreement or the Services shall be brought only in the Court.  Each Party (a) consents to the jurisdiction of the Court and waives all objections and defenses based upon lack of personal jurisdiction of the Court, (b) waives any objection to venue in the Court, and (c) waives any objection that the Court is an inconvenient forum.  The Parties further agree to waive the right to a jury in any court trial or proceeding.  EACH OF CASCADIA AND RECEIVER WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) TO ENFORCE, OR ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING THE ENGAGEMENT OF CASCADIA PURSUANT TO, OR THE PERFORMANCE BY CASCADIA OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

(h)    **Attorneys' Fees.**  In the event any action is brought by Cascadia or Receiver before any court or other tribunal enforce this Agreement, the primarily prevailing party in such proceeding shall be entitled to recover, in addition to any other appropriate amounts, its reasonable fees, costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees, expert witness expenses, court costs, and other expenses of litigation.

(i)    **Advice of Counsel.**  EACH PARTY ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

[Signature page follows]

Touchstone Pistachio Company – February 2025

     The Parties hereto have executed this Agreement as of the date first set forth above.

Signed: _David P. Stapleton_

DocuSigned by:
65A136ABFC9541D

David P. Stapleton, solely in
his capacity as Receiver of
Touchstone Pistachio
Company, LLC
515 S. Flower St.
18th Floor
Los Angeles, CA 90071
Email: david@stapletoninc.com

**CASCADIA CAPITAL, LLC**
1000 2ND AVENUE, SUITE 1200
SEATTLE, WASHINGTON 98104
legal@cascadiacapital.com

*Either*

Signed: _Michael_

By:  Michael Butler
Its:  Chief Executive Officer

*Or*

Signed: _____

By:  Bryan Jaffe
Its:  Chief Operating Officer

*And*

Signed: _Scott Porter_

By:  Scott Porter
Its:  Managing Director

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

Touchstone Pistachio Company – February 2025

## **EXHIBIT A**

### **DESCRIPTION OF ADVISORY SERVICES**

Cascadia shall serve as the exclusive marketing agent and sales advisor to Receiver regarding any transaction or a series of related transactions which results, directly or indirectly, in a sale or transfer of the Company's pistachio processing facility located at 19570 Ave. 88, Terra Bella, California and the real property, rights, fixtures and appurtenances associated therewith (the "**Property**"), including without limitation by means of an auction and sale of the Property and Ancillary Property (defined below) (collectively referred to as a "**Transaction**").  As Receiver's exclusive advisor, Cascadia will perform the following services for Receiver, to the extent customary and appropriate in transactions of this type, and as reasonably requested by Receiver:

- Assisting Receiver with defining strategic and financial objectives to dispose of the Property, including formulating bidding and sales procedures to maximize the value received for the Property;

- Assisting Receiver with identifying and resolving issues relevant to potential purchasers' due diligence on the Property;

- Assisting Receiver with identifying, screening and communicating with potential parties to the Transaction;

- Assisting Receiver in the preparation of a confidential memorandum and accompanying materials for distribution to such parties that describes the Property, the historical performance of the Property and the Company, and various operational, legal and practical issues pertaining to the Property;

- Creating a datasite and coordinating due diligence information requested by potential purchasers regarding the Property;

- Assisting Receiver in evaluating proposals received from such parties;

- Assisting Receiver with negotiation of the financial terms and structure of the Transaction;

- Organizing discussions to review the progress of each of the foregoing services throughout the Term of this Agreement; and

- Providing such documents and information (including testimony, as appropriate) as the Receiver may reasonably request to obtain Court approval of the Transaction.

For the avoidance of doubt, unless requested and agreed to by the Receiver in writing, the Services shall not include the sale of crop inventory or other personal property Collateral (as defined in the Receivership Order), other than the Ancillary Property, and any such sales shall not constitute a Transaction or be subject to compensation as set forth on Exhibit B.  The term "**Ancillary Property**" shall refer to all non-real property identified as "Acquired Assets" in that

160692389.3

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

Touchstone Pistachio Company – February 2025

certain stalking horse purchase and sale agreement between Receiver and Zamora Pistachio, LLC (the "**Stalking Horse PSA**").

## EXHIBIT B

## COMPENSATION

In consideration of Cascadia providing the Services, Receiver agrees Cascadia shall receive compensation and reimbursement as set forth below, subject in all respects to the terms of the Receivership Order, the Retention Order, and any other applicable orders entered by the Court.

Expenses

In addition to any fees payable hereunder and regardless of whether or not a Transaction is consummated, the Receiver agrees Cascadia shall be reimbursed for any expenses incurred related to the Transaction. Accordingly, Receiver shall reimburse Cascadia periodically (but no more frequently than monthly), upon request and as provided in the "Invoices and Payment" section below, and upon consummation of a Transaction or upon expiration or termination of the Term, for its reasonable out-of-pocket fees and expenses, including, among others, monthly data acquisition costs, document production, and the reasonable fees and disbursements of its attorneys. Notwithstanding the foregoing, any such reimbursable fees and expenses shall not exceed $15,000 in the aggregate, without the prior written consent of the Receiver.

Invoices and Payment

Upon receipt of any invoice relating to payment of fees or reimbursement of expenses, Receiver shall pay Cascadia the entire amount within thirty days of the date the Receiver is authorized by the Court to pay such invoice pursuant to Paragraph 32 of the Receivership Order. Any amount past due shall carry a penalty interest charge from the payment due date of 12% per year. For the purposes of clarity, the foregoing shall not apply to the Success Fee, which shall be paid to Cascadia in cash at the closing of the Transaction through the flow of funds as part of the overall closing of the Transaction as further set forth below or as otherwise ordered by the Court.

Success Fee

If a Transaction is consummated pursuant to an agreement or commitment that Receiver enters into during the Term or within 12 months after the end of the Term, Receiver shall pay Cascadia a fee as specified below (each, a "**Success Fee**") calculated using the following table and defined terms. Notwithstanding the foregoing, the Company shall not be obligated to pay a Success Fee after the end of the Term, in the event the Agreement is terminated pursuant to Section 4 (c) thereof.

| TOTAL TRANSACTION VALUE | SUCCESS FEE |
|---|---|
| Up to $25,000,000 | 2.50% of Total Transaction Value, but in no event less than $500,000 |
| Between $25,000,001 - $35,000,000 | $625,000, plus 2.75% of Transaction Value over $25,000,000 |
| Between $35,000,001 - $45,000,000 | $900,000, plus 3.00% of Transaction Value over $35,000,000 |

160692389.3

Docusign Envelope ID: 771D217D-D34C-40BF-A440-3E70DEA6E254

Touchstone Pistachio Company – February 2025

| $45,000,001 or more | $1,200,000, plus 3.25% of Transaction Value over $45,000,000 |
|---|---|

The term "**Transaction Value**" means the total value of all consideration paid or payable or to be paid or payable, directly or indirectly, to or for the benefit of Receiver in connection with the Transaction, including (a) <u>cash</u> and, (b) if any only to the extend agreed by the Receiver and U.S. Bank in their sole discretion, (i) promissory notes, (ii) equity or debt securities or other equity interests or debt instruments, (iii) the face amount of any indebtedness that is assumed, repaid, refinanced or discharged in connection with the Transaction (including capitalized leases), (iv) any form of consideration to be paid or liabilities to be assumed which involve above-market amounts, such as above-market related-party consulting agreements, above-market related-party employment contracts, or similar related-party agreements, and (v) in any Transaction involving a sale-leaseback of the Property, the proceeds received in connection with such sale-leaseback. For clarification, the Transaction Value shall include the total value of all consideration regardless of the timing of the payment of such consideration, including deferred installments of purchase price (including payments in the form of cash or promissory notes), amounts placed in escrow and earn-out and contingent payments. No post-closing adjustments or changes to consideration paid at the closing of a Transaction (such as a working capital true-up) will result in any decrease in any amount paid or payable to Cascadia.

Notwithstanding the foregoing, or any other provision of the Agreement, in the event (1) Receiver consummates a Transaction for Lot 1 (as defined in the Stalking Horse APA) to one purchaser, and consummates a separate qualifying Transaction or Transactions for Lot 2 (as defined in the Stalking Horse APA) or portions thereof to one or more other purchaser(s), then the Success Fee payable to Cascadia under this Agreement shall be reduced by an amount equal to one percent (1%) of the consideration paid or payable to the Receiver for such Lot 2 assets by a Specified Purchaser (if any). As used herein, the term Specified Purchaser shall mean any of the following: California Pistachio Orchards; Toor Farms; Primex Farms; Meridian Growers; JTI Electric; or Lighthouse Electric.

The Receiver shall request that the Court authorize the Success Fee be paid to Cascadia in cash at the closing of the Transaction through the flow of funds as part of the overall closing of the Transaction. For clarity, the Receiver shall request that any portions of the Success Fee attributable to (a) amounts placed in escrow, (b) deferred installments of purchase price, including payments in the form of cash or promissory notes (the value of which will be deemed to be the face amount thereof), or (c) earn-out or contingent payments, shall be paid to Cascadia upon the closing of the Transaction. For the avoidance of doubt, (i) the Receiver shall not be obligated to pay the Success Fee until such time as such payment is permitted by Paragraph 32 of the Receivership Order or any other applicable order entered by the Court (including the Retention Order), (ii) all compensation, reimbursement and any other amounts owed to Cascadia under this Agreement shall be payable exclusively from the Receivership Property or a Receivership Advance (each as defined in the Receivership Order), and (iii) under no circumstances shall the Receiver or his agents, attorneys, accountants or employees have any personal obligation for any amounts owed to Cascadia under this Agreement.

160692389.3